Reginald SWEET, Relator,

v.

COMMISSIONER OF HUMAN
SERVICES, Respondent.

No. A04–2274.

Court of Appeals of Minnesota.

Aug. 23, 2005.

Bradford W. Colbert, Legal Assistance to Minnesota Prisoners, St. Paul, MN, for relator.

Mike Hatch, Attorney General, Stephanie A. Riley, Assistant Attorney General, St. Paul, MN, for respondent.

Considered and decided by DIETZEN, Presiding Judge; HALBROOKS, Judge; and PARKER, Judge.*

## OPINION

DIETZEN, Judge.

Relator Reginald Sweet challenges the decision of the Commissioner of Human Services (commissioner) denying relator's request to set aside his disqualification from working as a counselor in a state-licensed program because of his criminal record, including convictions of first-degree and third-degree criminal sexual conduct. Relator argues that the commissioner's decision was arbitrary, capricious, and unsupported by substantial evidence and that the commissioner violated relator's right to due process. Because substantial evidence supports the commissioner's decision and relator had the opportunity and exercised his right to present written evidence to the commissioner, we affirm.

## FACTS

In August and November 1992, relator was convicted of separate controlled-substance crimes. In June 1998, relator was convicted of both first-degree and third-

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

degree criminal sexual conduct. After the 1998 convictions, relator was incarcerated. While incarcerated, he completed a program designed to help African–American men prepare for their release from incarceration; spent two years tutoring and facilitating classes for other inmates on issues relating to housing, employment, personal attitudes, and change; completed a computer-training program; and completed a psycho-educational sexual behavior class. He was released in May 2003.

After his release, relator became a minister; joined the AMICUS Re–Entry Advisory Group and speaker's bureau, mentoring incarcerated individuals on issues related to release from prison; became a speaker for the Council on Crime and Justice; and provided counseling at Aftercare Services, Inc. (Aftercare) to current and former inmates with drug and alcohol addictions.

Because Aftercare is a state-licensed program, the Minnesota Department of Human Services' Division of Licensing was required by law to conduct a background study on relator, who had direct contact with individuals served by the program. Minn.Stat. § 245C.03, subd. 1 (2004). In the course of conducting the background study, the Division of Licensing discovered relator's prior convictions of controlled-substance crimes and first-degree and third-degree criminal sexual conduct. In July 2004, the Minnesota Department of Human Services sent relator a letter informing him that he was disqualified under Minn.Stat. § 245C.14, subd.1 (2004), from providing direct-contact services for Aftercare. The disqualification letter stated that relator's convictions disqualify him from "providing direct contact services for facilities licensed by the Department of Human Services and the Minnesota Department of Health...." After reviewing the disqualifying information, the commis-

sioner stated that relator poses an imminent risk of harm to the clients he served based on the serious nature of the convictions, the number of convictions, and the vulnerability of the clients of Aftercare.

Under Minn.Stat. § 245C.21, subd. 1 (2004), relator had the right to seek reconsideration of the disqualification. An application form to request reconsideration prepared by the commissioner required that relator answer certain questions pertaining to whether he poses a risk of harm to Aftercare's clients. The burden of proof was on relator to demonstrate no risk of harm to Aftercare's clients. *See* Minn. Stat. § 245C.22, subd. 4 (2004). In determining whether relator poses a risk of harm, the commissioner was required by statute to give preeminent weight to the safety of each person served by Aftercare, but was also required to consider:

(1) the nature, severity, and consequences of the event or events that led to the disqualification;

(2) whether there is more than one disqualifying event;

(3) the age and vulnerability of the victim at the time of the event;

(4) the harm suffered by the victim;

(5) the similarity between the victim and persons served by the program;

(6) the time elapsed without a repeat of the same or similar event;

(7) documentation of successful completion by the individual studied of training or rehabilitation pertinent to the event; and

(8) any other information relevant to reconsideration.

*See* Minn.Stat. § 245C.22, subds. 3, 4 (2004).

Relator was not afforded an oral hearing, but he did submit a written response to the application form and provided extensive written documentation to support

his request for reconsideration. The application form asks questions relevant to determining whether relator poses an imminent risk of harm. In response to the question: "Explain the details of the crime you committed. What did you do?", relator wrote, in part, "I am [the victim's] fifth victim. I know what I did was wrong but NO sexual activity took place. I have enclosed the medical reports to prove such. Please do a background check on [the victim]!!! I am not the only person [the victim] has sent to jail on the same charge." Under the space provided for "Additional Comments", relator wrote, in part, "I have enclosed the sexual examination papers along with the finding on the bottle. You will see no DNA or fluids from me. It's impossible to have sex without the exchange of DNA and body fluids."

Relator also described in his application for reconsideration the changes he has undergone since he committed the crime and how his experiences could help him be a better counselor. Relator wrote, "I received rehabilitation while incarcerated.... I learned about coping with stress management, boundaries, and [the] sexual assault cycle. And as a minister, I have to be able to teach others from my past mistakes." Relator submitted 13 certificates and awards showing he had completed courses in psycho-educational sexual behavior, computer training, life skills, and ministry. He also submitted 12 letters of support from his supervised-release agent, various organizations through which he provided counseling or training services, and program organizers he had worked with in prison. The letters described relator as "dedicated to providing positive guidance to young men recently released from various Minnesota Correctional Facilities," "a major asset in working with and helping those who are chemically dependent," making "positive contributions to human services," and showing "great promise with his diligent approach for change." Relator did not provide any medical or psychological evaluations describing his rehabilitation or showing whether he poses a risk of harm to Aftercare's clients.

In September 2004, the Minnesota Department of Human Services sent relator a letter informing him of the results of the commissioner's reconsideration. The commissioner stated that she applied and weighed the eight applicable statutory factors with respect to relator's disqualification record and gave preeminent weight to the safety of Aftercare's clients. The commissioner noted the serious and violent nature of relator's criminal offenses. The commissioner stated that because of relator's history of assaultive behavior and because the clients relator would work with may have "extensive challenging behaviors," there could be a greater risk that relator would react inappropriately to his clients' behaviors than an individual "who [had] never committed a violent act." The commissioner observed that relator's responses on the application form blaming the victim of relator's crimes indicate that relator has failed to take responsibility for his actions. Regarding the letters of support, the commissioner stated that their authors did not witness and were not victims of any of relator's disqualifying acts, and relator's "behavior at the time of the disqualifying event may not be characteristic of [his] behavior with the person who submitted the letter of support." The commissioner also noted that relator did not address his two disqualifying drug offenses. Based on these findings, the commissioner decided that relator had not proved that he was rehabilitated and no longer poses a risk of harm, and, therefore, the commissioner did not set aside relator's disqualification. Relator then

filed a petition for writ of certiorari with this court.

## ISSUES

I. Was the commissioner's decision denying relator's motion to set aside his disqualification supported by substantial evidence?

II. Was relator deprived of his right to procedural due process because he did not receive an evidentiary hearing?

## ANALYSIS

### I.

Relator argues that the commissioner's refusal to set aside relator's disqualification was not supported by substantial evidence and was arbitrary and capricious. An appellate court may reverse an administrative decision if it is not supported by substantial evidence or is arbitrary and capricious. *In re Excess Surplus Status of Blue Cross & Blue Shield of Minn.*, 624 N.W.2d 264, 277 (Minn.2001); *Johnson v. Comm'r of Health*, 671 N.W.2d 921, 923 (Minn.App. 2003). Substantial evidence is "1. [s]uch relevant evidence as a reasonable mind might accept as adequate to support a conclusion; 2.[m]ore than a scintilla of evidence; 3.[m]ore than some evidence; 4.[m]ore than any evidence; and 5.[e]vidence considered in its entirety." *White v. Minn. Dep't of Natural Res.*, 567 N.W.2d 724, 730 (Minn.App.1997), *review denied* (Minn. Oct. 31, 1997). An agency's conclusion is arbitrary and capricious if there is no rational connection between the facts and the agency's decision. *Blue Cross & Blue Shield*, 624 N.W.2d at 277.

Relator argues that the commissioner erred by failing to properly consider the statutory criteria and by failing to find that he was rehabilitated and no longer poses a risk of harm to Aftercare's clients.

But the commissioner's September 2004 denial letter shows that the commissioner did consider the eight applicable statutory factors. Considering the first factor in determining whether an individual poses a risk of harm, the commissioner noted the serious and violent nature of relator's criminal sexual offenses. *See* Minn.Stat. § 245C.22, subd. 4(b) (listing the first factor as "the nature, severity, and consequences of the event or events that led to the disqualification"). The commissioner also stated that the second factor, the number of disqualifying offenses, showed that relator poses a risk of harm because he committed four disqualifying offenses. *See id.* (stating the second factor is "whether there is more than one disqualifying event").

The other four reasons given by the commissioner fall under the eighth factor, "any other information relevant to reconsideration." *See id.* First, the individuals with whom relator would have direct contact are vulnerable because they may be in the controlled environment of prison or recently out of prison, suffer from drug and/or alcohol addiction, and have extensive challenging behaviors. Second, the commissioner stated that relator failed to take responsibility for his actions. In his request for reconsideration, relator stated that he was the victim of the woman he was convicted of sexually assaulting and stated that the commissioner should conduct a background check on her. Third, the support letters were not reflective of relator's whole character. The letters do not address whether relator poses a risk to Aftercare's clients and are silent as to relator's current medical and psychological state. Fourth, relator failed to address the drug charges that were also disqualifying.

The crux of the issue is whether relator was rehabilitated and poses no risk of

harm to Aftercare's clients. But relator presented no medical or psychological evidence to support his contention that he is fully rehabilitated. In his application to the commissioner, relator blamed the victim of the crime and argued that the evidence was insufficient to support his conviction. Here, the commissioner found, and the record supports, the determination that relator refuses to take responsibility for his actions and blames the victim for his criminal-sexual-conduct convictions.

We conclude that substantial evidence supports the commissioner's decision, which clearly articulates the factual basis for the agency's decision. Minn.Stat. § 245C.22, subd. 3, requires the commissioner to give preeminent weight to the protection of clients of state-licensed programs, and it was within the commissioner's discretion to determine that the evidence of relator's rehabilitation was not sufficient to conclude that relator does not pose a risk of harm to individuals with whom he would have direct contact. *See Blue Cross & Blue Shield,* 624 N.W.2d at 277; *White,* 567 N.W.2d at 730.

## II.

■ Next, relator argues that Minn. Stat. § 245C.27, subd. 1(c) (2004), unconstitutionally deprives him of procedural due process because an individual disqualified under Minn.Stat. § 245C.15 (2004) is not entitled to an evidentiary hearing on a motion to set aside the disqualification. The commissioner argues that the statute provides for adequate procedural due process.

The constitutionality of a statute is a question of law, which we review de novo. *Unity Church of St. Paul v. State,* 694 N.W.2d 585, 591 (Minn.App.2005), *review dismissed* (Minn. Jun. 9, 2005). We presume statutes are constitutional, and we will declare a statute unconstitutional

"with extreme caution and only when absolutely necessary." *In re Haggerty,* 448 N.W.2d 363, 364 (Minn.1989). "A party challenging a statute carries the heavy burden of demonstrating beyond a reasonable doubt that a statute is unconstitutional." *Unity Church,* 694 N.W.2d at 591.

■ "The due process protection provided under the Minnesota Constitution is identical to the due process guaranteed under the Constitution of the United States." *Sartori v. Harnischfeger Corp.,* 432 N.W.2d 448, 453 (Minn.1988). "Procedural due process protections restrain government action which deprives individuals of 'liberty' or 'property' interests within the meaning of the due process clause of the Fifth and Fourteenth Amendments of the United States Constitution and Article I, Section 7 of the Minnesota Constitution." *Humenansky v. Minn. Bd. of Med. Examiners,* 525 N.W.2d 559, 565 (Minn. App.1994), *review denied* (Minn. Feb. 14, 1995). To determine whether an individual's right to procedural due process has been violated, we first determine whether a protected liberty or property interest is implicated and then determine what process is due by applying a balancing test. *Mathews v. Eldridge,* 424 U.S. 319, 332, 335, 96 S.Ct. 893, 901, 903, 47 L.Ed.2d 18 (1976); *Humenansky,* 525 N.W.2d at 566.

Relator concedes that the state has a legitimate interest in protecting vulnerable adults from sex offenders and does not dispute that the commissioner can make an initial determination of disqualification without holding a hearing. But relator argues he has a protected property interest in working in his chosen profession without governmental interference and that only a hearing can protect that interest. Therefore, relator concludes that he is entitled to an evidentiary hearing on his motion to set aside the disqualification.

We have previously recognized that an individual has a property and liberty interest in pursuing private employment. *State ex rel. Pavlik v. Johannes*, 194 Minn. 10, 19, 259 N.W. 537, 540–41 (1935); *Pomrenke v. Comm'r of Commerce*, 677 N.W.2d 85, 91 (Minn.App.2004), *review denied* (Minn. May 26, 2004). Here, the commissioner's decision not to set aside relator's disqualification restricts relator's ability to pursue employment in the public sector involving counseling incarcerated and recently released individuals in state-licensed programs. But the commissioner's decision does not limit relator's ability to seek and obtain employment as a counselor in the private sector. Nonetheless, we conclude that relator has a property interest to pursue employment as a counselor in the public sector.

■ Having concluded that relator has a property interest, we apply the *Mathews* balancing test to determine what process is due. In applying the *Mathews* test, we must consider three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest, through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substantive procedural requirement would entail.

*Fosselman v. Comm'r of Human Servs.*, 612 N.W.2d 456, 462 (Minn.App.2000) (quoting *Mathews*, 424 U.S. at 335, 96 S.Ct. at 903) (determining that individuals disqualified from employment in direct-contact positions for allegedly failing to report the maltreatment of minors are entitled to hearings on whether they failed to report maltreatment).

■ In analyzing these three factors, we observe that the concept of procedural due process is flexible and that an individual's interest in working in a chosen profession is not absolute. *Pomrenke*, 677 N.W.2d at 91–92; *Humenansky*, 525 N.W.2d at 566. A judicial hearing is not always the best method to present a case or to determine an issue. *See Mathews*, 424 U.S. at 348, 96 S.Ct. at 909 ("The judicial model of an evidentiary hearing is neither a required, nor even the most effective, method of decisionmaking in all circumstances."). "All that is necessary is that the procedures be tailored, in light of the decision to be made, to the capacities and circumstances of those who are to be heard, to insure that they are given a meaningful opportunity to present their case." *Id.* at 349, 96 S.Ct. at 909 (quotation omitted). We turn now to the *Mathews* factors.

The first *Mathews* factor considers the property interest at stake: here, the right to seek counseling employment in the public sector. *See id.* at 335, 96 S.Ct. at 903. Employment in an individual's chosen field is significant and weighs heavily in the individual's favor. *See Fosselman*, 612 N.W.2d at 462 (determining that the first *Mathews* factor weighed heavily in favor of the employees because of the significance of the employees' interest in retaining employment). But unlike *Fosselman*, where the employees were "unable to pursue their chosen occupations" because of the disqualification, relator is not disqualified from working in every position in his profession; he is only disqualified from working in state-regulated facilities. *See id.* at 464. Therefore, relator's interest is less restricted than the employees' interest in *Fosselman*. But continued employment in the public sector is a significant interest. Consequently, we conclude that the first factor weighs in relator's favor.

The second factor considers the procedures used by the governmental agency, the potential risk of an erroneous decision, and the probable value of an oral hearing. *See Mathews*, 424 U.S. at 335, 96 S.Ct. at 903. Minn.Stat. § 245C.22, subd. 4, places the burden of proof on the applicant to show that he is not disqualified by the statutory criteria and does not pose a risk of harm. Here, relator had the unfettered right to present all evidence, including letters of support, that he thought the commissioner should consider in his written submission. As such, relator was permitted to "mold his argument to the issues the decision maker appears to regard as important" in support of his application. *Mathews*, 424 U.S. at 345, 96 S.Ct. at 908 (quotation omitted). Because relator had the right to submit his case in writing to the commissioner, we see no prejudice to relator's due-process right to be heard. And because the agency presented no controverting testimony, a hearing was not necessary to permit cross-examination of agency witnesses.

Relator cites *Fosselman* and *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), to argue that procedural due process mandates an oral hearing in the instant case. In *Fosselman*, two registered nurses and a qualified mental retardation professional were disqualified by the commissioner for failing to report the maltreatment of a child. 612 N.W.2d at 458–59. The issue before the commissioner was whether the nurses and professional had actually committed the act that would subject them to disqualification: that is, whether maltreatment had occurred that they had failed to report. *Id.* at 463. Thus, the evidence supporting the disqualification was disputed. In *Goldberg*, the issue was whether recipients declared ineligible for continuation of welfare benefits had the right to oral pretermination hearings to determine whether

they met all the eligibility requirements to receive benefits. 397 U.S. at 264, 90 S.Ct. at 1018 (stating that the termination of welfare benefits generates a dispute over eligibility). Here, the initial disqualification of relator because of his convictions has not been challenged. Relator has already been afforded the full panoply of rights in the criminal proceedings leading up to his convictions. But the appellants in *Fosselman* and *Goldberg* were not afforded such due-process rights and, therefore, we conclude that the cases are distinguishable.

Based on this record, we discern no likely value to an evidentiary hearing. Whether the case is presented orally or in writing to the commissioner, relator would submit the same evidence. Therefore, we conclude that allowing the appellant to file written submissions provided appellant with an adequate opportunity to present his case. Secondly, we also conclude that the potential risk of an erroneous decision is the same under either procedure. The commissioner is required to review and analyze relator's evidence regardless of the format in which it is presented. Therefore, we conclude that the second factor weighs in favor of the commissioner.

The third factor considers the government's interests. *Mathews* 424 U.S. at 335, 96 S.Ct. at 903. As we have previously discussed, the governmental interest in protecting the public, especially vulnerable individuals attending counseling for drug and alcohol addiction, is of paramount importance. *See* Minn.Stat. § 245C.22, subd. 3. The government also has an interest in saving time and money by reconsidering disqualifications quickly and efficiently, without the additional time, expenses, and personnel required to provide evidentiary hearings to disqualified individuals. If an individual disqualified for criminal convictions were due an oral evidentiary hearing,

the commissioner would need to hold one on the same issue every time the same individual was hired or rehired by a state-licensed program.

Financial cost alone is not a controlling weight.... But the Government's interest, and hence that of the public, in conserving scare fiscal and administrative resources is a factor that must be weighed. At some point the benefit of an additional safeguard to the individual affected by the administrative action and to society in terms of increased assurance that the action is just, may be outweighed by the cost.

*Id.* at 348, 96 S.Ct. at 909. We determine that in this case the cost outweighs the limited benefit, if any, of providing an evidentiary hearing. Therefore, we conclude that the third factor weighs in the commissioner's favor.

### DECISION

Application of the *Mathews* balancing test results in the conclusion that an evidentiary hearing was not required to afford relator with procedural due process; providing relator with the right to submit evidence in writing was adequate to meet the requirements of due process. Consequently, the statutory language contained in Minn.Stat. § 245C.27, subd. 1(c), that an applicant is not entitled to an evidentiary hearing is not unconstitutional on its face or as applied to relator. Because the procedure followed by the commissioner in this matter was appropriately tailored to the circumstances and meets the requirements of procedural due process, we affirm.

**Affirmed.**