*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1827**

John Fasan Atambo,
Relator,

vs.

Commissioner of Health,
Respondent.

**Filed April 20, 2015
Affirmed
Reyes, Judge**

Minnesota Department of Health
File No. 29882

John Fasan Atambo, Brooklyn Park, Minnesota (pro se relator)

Lori Swanson, Attorney General, David F. Strohkirch, Assistant Attorney General, St. Paul, Minnesota (for respondent)

Considered and decided by Bjorkman, Presiding Judge; Hudson, Judge; and Reyes, Judge.

**U N P U B L I S H E D   O P I N I O N**

**REYES**, Judge

On appeal, relator argues that his permanent disqualification from working in licensed facilities was not supported by substantial evidence in the record and violated his due-process rights. We affirm.

**FACTS**

On December 16, 2012, relator John Fasan Atambo was arrested on suspicion of criminal sexual conduct. According to the alleged victim, H.M., she and Atambo both worked as nursing assistants at Golden Valley Rehab. On December 16, Atambo was helping H.M. put away diapers in a supply room when he brushed up against her and tried to kiss her. Atambo then tried to pull down H.M.'s pants with one hand while squeezing her breast with his other hand. H.M. told Atambo to stop several times and tried to push him away and kick him. Atambo left the room and said he would see H.M. later. H.M. told the responding police officers that she "felt disgusting" during the incident and that she was afraid to continue working with Atambo. A coworker described H.M. to the officers as crying, scared, and clearly upset after the incident. After H.M. contacted a victim advocate and indicated that she did not wish to follow through with the case, the Hennepin County Attorney's Office declined to charge Atambo with fifth-degree criminal sexual conduct.

Atambo later applied to work at Edina Care & Rehab Center, which asked the Minnesota Department of Human Services (DHS) to perform a background study, as required by law. DHS reviewed the police reports concerning the December 2012 incident and concluded that "a preponderance of evidence" showed that Atambo "committed an act that meets the definition of criminal sexual conduct in the fifth degree" by brushing up against H.M., attempting to kiss her, squeezing her breast, and attempting to pull her pants down. On June 4, 2013, DHS sent a letter to Atambo, informing him that he was permanently disqualified from working for any licensed facility. The letter

2

also informed Atambo that he had 30 days to request reconsideration of his disqualification, and that if he did not request reconsideration, "subsequent background studies [would] result in an order for [his] immediate removal from any position allowing direct contact with, or access to, persons receiving services."

On March 3, 2014, DHS received a request for reconsideration from Atambo, in which he explained that he was never charged with criminal sexual conduct and that he was innocent. Atambo attached a letter from the Minnesota Bureau of Criminal Apprehension (BCA), stating that it had deleted the criminal-history record for Atambo's December 2012 arrest. Atambo's request for reconsideration was untimely. Nevertheless, the Minnesota Department of Health (MDH) decided to review the request on the merits.[1] MDH concluded that a preponderance of the evidence established that "Atambo committed acts meeting the definition of criminal sexual conduct in the fifth degree." In addition, MDH determined that "Atambo failed to establish the information relied upon in determining the underlying conduct that gave rise to the disqualification was incorrect" because he did not challenge the accuracy of the police reports and did not present information on reconsideration that was unavailable at the time of DHS's initial determination. Because "the [r]ecord establishes the information used in determining the underlying conduct that gave rise to Atambo's disqualification was correct," MDH upheld Atambo's disqualification.

---

[1] MDH considered Atambo's request for reconsideration because it licensed the facility in question. *See* Minn. Stat. § 144.057, subd. 3 (2014).

On April 18, 2014, MDH sent a letter to Atambo, informing him that his disqualification was affirmed. MDH explained that the disqualification was "conclusive" because Atambo had not filed a timely request for reconsideration and that Atambo could only seek further review by appealing to this court within 60 days.

Atambo then applied to work at Assisting Hands of Minneapolis, which asked DHS to perform a background study. On August 1, DHS sent a letter to Atambo, again explaining that he was permanently disqualified due to the December 2012 incident and stating that Atambo "pose[d] an imminent risk of harm to persons receiving services." DHS informed Atambo that he had 30 days to request reconsideration of his disqualification.

Atambo timely requested reconsideration. He stated that "updated information" absolved him of wrongdoing and submitted the same BCA letter he had previously submitted along with a record search by the Hennepin County Court Administrator showing that Atambo did not have a criminal record. On October 2, 2014, MDH sent a letter to Atambo, stating that the information used to disqualify him was correct, the preponderance of the evidence showed that he committed a disqualifying offense, and his submitted information did not change his disqualification. MDH explained that Atambo's disqualification "is deemed final because a previous study concluded on April 18, 2014, indicated that the disqualification was deemed final." Finally, MDH informed Atambo that he could only receive further review by appealing to this court within the proper time limit. This appeal followed.

4

**D E C I S I O N**

## I.    Disqualification Evidence

Atambo first argues that the commissioner's determination on reconsideration was erroneous because the evidence supports his innocence of the underlying offense.[2] Because the commissioner's decision on reconsideration is a quasi-judicial agency decision, we examine the record and determine whether the decision "was arbitrary, oppressive, unreasonable, fraudulent, under an erroneous theory of law, or without any evidence to support it." *Anderson v. Comm'r of Health*, 811 N.W.2d 162, 165 (Minn. App. 2012) (quotation omitted), *review denied* (Minn. Apr. 17, 2012). "An appellate court may reverse an administrative decision if it is not supported by substantial evidence or is arbitrary and capricious." *Sweet v. Comm'r of Human Servs.*, 702 N.W.2d 314, 318 (Minn. App. 2005), *review denied* (Minn. Nov. 15, 2005).

DHS is required to conduct a background study on anyone applying to work in a facility licensed by DHS or MDH. Minn. Stat. § 144.057, subd. 1 (2014); Minn. Stat. § 245C.03, subd. 1 (2014). An individual is permanently disqualified from working in a licensed facility if he has committed a number of specified crimes, including any degree of criminal sexual conduct. Minn. Stat. § 245C.15, subd. 1(a) (2014). But a conviction is not required. An individual is disqualified if "a preponderance of the evidence indicates

---

[2] We note that Atambo failed to timely request reconsideration of DHS's June 2013 permanent-disqualification determination and that any challenge to this determination is now time-barred. *See* Minn. Stat. § 245C.29, subd. 2(a)(2) (2014); *Smith v. Minn. Dep't of Human Servs.*, 764 N.W.2d 388, 391-92 (Minn. App. 2009) (holding a challenge time-barred when the relator "failed to challenge the determination in a timely fashion"). Nevertheless, we briefly analyze the merits of this determination solely to evaluate Atambo's argument that the commissioner erred on reconsideration.

the individual has committed" one of the specified crimes. Minn. Stat. § 245C.14, subd. 1(a)(2) (2014). "When a disqualification is based on a preponderance of evidence of a disqualifying act, the disqualification date begins from . . . the date of the incident." Minn. Stat. § 245C.15, subd. 1(d) (2014).

"An individual who is the subject of a disqualification may request a reconsideration of the disqualification" in writing within 30 days of receipt of the disqualification notice. Minn. Stat. § 245C.21, subds. 1, 1a(c) (2014). "The disqualified individual requesting reconsideration must submit information showing that the information the commissioner relied upon in determining the underlying conduct that gave rise to the disqualification is incorrect." *Id.*, subd. 3(a)(1) (2014). If the commissioner determines that the information relied upon to disqualify the individual is incorrect, the commissioner must rescind the disqualification. Minn. Stat. § 245C.22, subd. 2 (2014). The commissioner may not otherwise "set aside" a permanent disqualification. Minn. Stat. § 245C.24, subd. 2(a) (2014). For facilities licensed by MDH, the commissioner of health reviews requests for reconsideration, and the commissioner's decision "is the final administrative agency action." Minn. Stat. § 144.057, subd. 3.

Here, Atambo did not timely request reconsideration of the June 2013 permanent-disqualification determination, so that determination became final and conclusive. *See* Minn. Stat. § 245C.29, subd. 2(a)(2). Even though he was not required to analyze Atambo's untimely reconsideration request, the commissioner chose to analyze it to ensure that the information relied upon was correct. *See* Minn. Stat. § 245C.21, subd.

3(a)(1).  Because Atambo did not challenge the correctness of the information relied upon and submitted evidence that only confirmed DHS's understanding that Atambo was not charged with a crime, we agree with the commissioner's determination that the information DHS relied upon was correct.

Atambo suggests that the commissioner erred by permanently disqualifying him from employment at licensed facilities because he was not convicted of a specified crime. In doing so, Atambo confuses a criminal conviction, which requires proof beyond a reasonable doubt, *see In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 1073 (1970), and the commissioner's administrative disqualification, which requires only proof by a preponderance of the evidence, *see* Minn. Stat. § 245C.14, subd. 1(a)(2).  A conviction is not required for disqualification, and the commissioner need only determine that "a preponderance of the evidence indicates the individual has committed an act or acts that meet the definition of any" specified crime.  Minn. Stat. § 245C.14, subd. 1(a)(2).  When making this determination, the commissioner "may review arrest and investigative information" from the BCA and local police departments if the commissioner "has reasonable cause to believe the information is pertinent to the disqualification of an individual."  Minn. Stat. § 245C.08, subd. 3(a) (2014).  Moreover, the commissioner may consider even court-expunged information "unless the commissioner received notice of the petition for expungement and the court order for expungement is directed specifically to the commissioner."  *Id.*, subd. 1(b) (2014).  Because there is no evidence that the commissioner received any such notice or order, he properly considered the evidence regarding Atambo's December 2012 arrest.

We agree with the commissioner's determination that a preponderance of the evidence shows that Atambo committed fifth-degree criminal sexual conduct, a specified crime that results in permanent disqualification. *See* Minn. Stat. § 245C.15, subd. 1(a). Fifth-degree criminal sexual conduct requires (1) sexual contact, (2) without the victim's consent, and (3) done with sexual intent. *See* Minn. Stat. § 609.3451, subd. 1 (2014); 10 *Minnesota Practice*, CRIMJIG 12.52 (2006). "Sexual contact" includes intentionally touching the victim's intimate parts, touching the clothing covering the victim's intimate parts, and removing or attempting to remove the clothing covering the victim's intimate parts. *See* Minn. Stat. § 609.341, subd. 11(a) (2014); Minn. Stat. § 609.3451, subd. 1; CRIMJIG 12.52.

H.M. told police officers and coworkers that Atambo squeezed her breast with one hand and tried to pull down her pants with his other hand. These actions constitute "sexual contact" under the relevant statutes. *See* Minn. Stat. § 609.341, subd. 11(a); Minn. Stat. § 609.3451, subd. 1. H.M. also stated that she repeatedly told Atambo to stop, and tried to push him away and kick him, demonstrating that Atambo's actions were nonconsensual. *See* Minn. Stat. § 609.3451, subd. 1. Finally, Atambo's conduct of cornering H.M. in a supply room, touching her, trying to kiss her, and trying to pull her pants down supports an inference that Atambo acted with sexual intent. *See State v. Austin*, 788 N.W.2d 788, 792 (Minn. App. 2010) (stating that sexual intent is an act "based on sexual desire or in pursuit of sexual gratification" and "typically must be inferred from the nature of the conduct itself"), *review denied* (Minn. Dec. 14, 2010). A preponderance of the evidence therefore supports the commissioner's conclusion that

Atambo committed the elements of fifth-degree criminal sexual conduct, regardless of the absence of charges or criminal convictions.

Because Atambo relies only on the fact that he was never charged with a crime and fails to contest the other evidence in the record, substantial evidence supports the commissioner's disqualification determination. *See Sweet*, 702 N.W.2d at 318.

## II. Due Process

Atambo also argues that his constitutional rights were violated because Minnesota law allows for his permanent disqualification from employment at licensed facilities without requiring a criminal conviction. We review the constitutionality of a statute de novo. *Obara v. Minn. Dep't of Health*, 758 N.W.2d 873, 879 (Minn. App. 2008). Because Atambo does not clearly challenge a particular statute's constitutionality and does not provide reasoning or legal authority, we decline to perform a lengthy analysis of Atambo's due-process claims. *See Anderson*, 811 N.W.2d at 166 (rejecting the relator's substantive-due-process argument because it was "undeveloped, [and] supported neither by reasoning nor any authority from which we might infer his reasoning").[3]

Nevertheless, even a brief analysis shows that Atambo's due-process arguments lack merit. We have previously rejected arguments that chapter 245C violates procedural-due-process rights. *See, e.g.*, *id.* at 167 (rejecting a procedural-due-process argument because the relator requested a substantive remedy on appeal, twice requested

---

[3] The only legal authority cited by Atambo is the Universal Declaration of Human Rights. The Declaration is not binding in United States courts, and is irrelevant to this appeal. *See Sosa v. Alvarez-Machain*, 542 U.S. 692, 734-35, 124 S. Ct. 2739, 2767 (2004) (stating that the Declaration does not impose obligations or establish the relevant law).

9

reconsideration with "full and fair" opportunities to challenge his disqualification, and made no request for an evidentiary hearing); *Sweet*, 702 N.W.2d at 321-22 (finding that the relator was not entitled to an evidentiary hearing because he could submit the same evidence in writing on reconsideration and the government had a strong interest in protecting the public). Atambo failed to timely file his first request for reconsideration after receiving notice that he had 30 days to do so, *see* Minn. Stat. § 245C.21, subd. 1a(c), and then failed to submit new evidence or suggest that the information the commissioner relied upon was incorrect, *see id.*, subd. 3(a)(1). We also note that the commissioner reviewed Atambo's untimely request for reconsideration on the merits, even though he was not required to do so. Given these circumstances, Atambo's procedural-due-process rights were not violated.

We have also rejected arguments that chapter 245C violates substantive-due-process rights. *See, e.g.*, *Anderson*, 811 N.W.2d at 167 (concluding that, even though the relator has a protected property interest in working in licensed facilities, he failed to show that his disqualification was not rationally related to the commissioner's legitimate interest in safeguarding patients at licensed facilities); *Obara*, 758 N.W.2d at 879-80 (explaining that the government has a strong interest in protecting vulnerable individuals and that chapter 245C "does not arbitrarily and capriciously deny relator of his occupation"). Although Atambo has a property interest in working in licensed facilities, he cites no caselaw suggesting that this interest is a fundamental right. *See Anderson*, 811 N.W.2d at 167 (explaining that the relator "made no claim that the statute implicates a fundamental right"). Atambo's disqualification is reasonably related to the legitimate

governmental interest of protecting vulnerable patients in licensed facilities. *See id.* There is therefore no evidence that chapter 245C violates Atambo's substantive-due-process rights.

**Affirmed.**