*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A25-1053**

Margaret Reynolds,
Appellant,

vs.

Shireen Gandhi, Commissioner of the
Minnesota Department of Human Services,
Respondent.

**Filed April 6, 2026**
**Affirmed**
**Bond, Judge**

Dakota County District Court
File No. 19HA-CV-24-1315

Jeffrey D. Schiek, Villaume & Schiek, P.A., Bloomington, Minnesota (for appellant)

Keith Ellison, Attorney General, R.J. Detrick, Assistant Attorney General, St. Paul, Minnesota (for respondent)

Considered and decided by Reyes, Presiding Judge; Harris, Judge; and Bond, Judge.

**NONPRECEDENTIAL OPINION**

**BOND**, Judge

Appellant challenges a district court order affirming the decision of respondent commissioner, which disqualified appellant from certain employment positions for seven years based on a determination that she seriously maltreated a vulnerable adult. Appellant argues that the commissioner's maltreatment determination improperly relied on hearsay

evidence in violation of her procedural-due-process rights and is not supported by substantial evidence. Appellant also argues that the disqualification should have been set aside. We affirm.

**FACTS**

In April 2022, appellant Margaret Reynolds was working as a caregiver at Rudolph Community Care Dynasty (RCC), a group home for vulnerable adults licensed by the Minnesota Department of Human Services (DHS). On April 20, Reynolds had an altercation with a vulnerable adult (VA) who lived in the group home. The VA is diagnosed with autism and has a history of self-harm, including banging his head against walls and scratching himself.

The facts of the altercation are disputed. According to a coworker who was present during the altercation, the coworker and Reynolds were talking in the kitchen when the VA approached Reynolds from behind and appeared to be about to put his hands on her. The coworker warned Reynolds, and Reynolds turned around and pushed and slapped the VA, knocking his glasses off. The VA began hitting his head against a wall, causing a picture frame to fall and strike him on the head. The coworker left the room to find another staff member. When the coworker returned, she saw Reynolds strike the VA with a broom handle, possibly more than once, and that the VA was bleeding from his left ear. The coworker was so upset by what she witnessed that she left the building and called RCC's program manager. When the program manager arrived, the VA hugged her and said, "Maggie hit [the VA]. The program manager observed that the VA had scratches and red marks on his neck and a cut on his ear that was bleeding.

2

RCC's vice president of programming conducted an internal investigation, which included interviewing Reynolds, the coworker, and other people working at RCC on the day of the altercation. Reynolds told the vice president that the VA injured himself by hitting his head against the wall and a picture fell and struck him. Based on its investigation, RCC terminated Reynolds's employment. The state brought criminal charges against Reynolds, but the charges were later dropped because the state could not locate a necessary witness.

DHS initiated a maltreatment investigation. During its investigation, DHS visited RCC, reviewed records, and interviewed Reynolds, the VA, the VA's mother, the coworker, and additional witnesses. In June 2022, DHS notified Reynolds that it had determined, pursuant to Minn. Stat. § 626.5572 (2024), that she had seriously maltreated the VA and that DHS had disqualified Reynolds under Minn. Stat. § 245C.14 (2024) from holding any position allowing direct contact with persons receiving services from programs it licenses. Reynolds requested reconsideration and DHS upheld its maltreatment and disqualification determinations.

Reynolds requested a hearing before a human-services judge (HSJ) pursuant to Minn. Stat. § 256.045, subd. 3(a)(9) (2024). A two-day hearing was held in January 2024. Among other witnesses, the DHS investigator, RCC's program manager and vice president, the VA's mother, and Reynolds testified at the hearing. Neither DHS nor Reynolds subpoenaed the coworker, and the coworker did not testify at the hearing. The HSJ recommended that respondent DHS commissioner affirm the agency's maltreatment and disqualification determinations. The HSJ found that the coworker's statements to the

3

program manager, the police, and the DHS investigator about the altercation were consistent and credible and that a preponderance of the evidence supported DHS's maltreatment and disqualification determinations. Regarding the admissibility of hearsay statements, the HSJ determined:

> Additionally, I do not view any witness statements that were recorded by the Agency or for which a written report was prepared, to be inadmissible hearsay evidence. Witnesses who interviewed [the coworker], including [the DHS investigator], as well as [the program manager] and [RCC's vice president], also testified at the hearing and were available for cross examination.

The HSJ also considered the statutory risk-of-harm factors which would allow DHS to set aside the disqualification and concluded that the nature of the conduct and injuries did not justify setting aside the disqualification.

The commissioner adopted the HSJ's findings and recommendations as DHS's final decision. Reynolds appealed the commissioner's decision to the district court pursuant to Minn. Stat. § 256.045, subd. 7 (2024). The district court affirmed the commissioner's final order finding Reynolds responsible for serious maltreatment and therefore disqualified, and denying her request to set aside the disqualification.

Reynolds appeals.

**DECISION**

On appeal from a district court's review of an agency's order, we independently review the agency's decision. *Zahler v. Minn. Dep't of Hum. Servs.*, 624 N.W.2d 297, 301 (Minn. App. 2001), *rev. denied* (Minn. June 19, 2001). In so doing, we will not "retry the facts or make credibility determinations." *Senior v. City of Edina*, 547 N.W.2d 411, 416

4

(Minn. App. 1996).  Administrative-agency decisions enjoy a "presumption of correctness" and the party challenging the agency decision has the burden of proving that the decision was reached improperly.  *In re Minn. Power's Petition for Approval of EnergyForward Res. Package*, 958 N.W.2d 339, 343-44 (Minn. 2021).

In reviewing the agency's decision, we apply the standard of review set forth in the Minnesota Administrative Procedure Act.  *See* Minn. Stat. § 14.69 (2024); *Zahler*, 624 N.W.2d at 301.  Under that standard, we may reverse or modify an administrative-agency decision if, among other reasons, the substantial rights of the petitioner may have been prejudiced because the decision was "in violation of constitutional provisions" or was "unsupported by substantial evidence in view of the entire record as submitted."  Minn. Stat. § 14.69(a), (e).

## I. The commissioner's maltreatment decision did not deny Reynolds procedural due process or improperly rely solely on hearsay.

Reynolds argues that DHS's failure to subpoena the coworker to testify at the human-services hearing violated her procedural-due-process rights because she was denied the opportunity to cross-examine the coworker about her description of the incident with the VA.[1]  Reynolds also argues that the commissioner's decision improperly relied solely on hearsay.  We consider each argument in turn.

---

[1] Reynolds also asserts that DHS failed to subpoena the VA, but she concedes that the VA is not competent to testify.

**Procedural Due Process**

"The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quotation omitted). Appellate courts review whether the government has violated an individual's procedural-due-process rights de novo. *Sawh v. City of Lino Lakes*, 823 N.W.2d 627, 632 (Minn. 2012). We "conduct a two-step analysis to determine whether the government has violated an individual's procedural due process rights." *Id.* We first consider whether the government deprived the person of a protected life, liberty, or property interest. *Id.* If it has, we then consider whether the procedures used by the government were constitutionally sufficient. *Id.* The parties agree that Reynolds has protected property and liberty interests in her chosen field of work that entitles her to procedural due process. *See Fosselman v. Comm'r of Hum. Servs.*, 612 N.W.2d 456, 461 (Minn. App. 2000) (concluding that disqualification proceedings are subject to procedural-due-process requirements due to protected property and liberty interests involved).

Turning to the second step in the inquiry, courts apply the three-factor *Mathews* test to determine whether the government procedures were sufficient. *Mathews*, 424 U.S. at 335. The *Mathews* test requires courts to consider:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* We balance these factors to determine whether the government provided constitutionally sufficient procedural due process. *See, e.g.*, *Sweet v. Comm'r of Hum. Servs.*, 702 N.W.2d 314, 322 (Minn. App. 2005), *rev. denied* (Minn. Nov. 15, 2005).

DHS concedes that the first *Mathews* factor—Reynolds's private interest—weighs in favor of Reynolds. We agree that, because the serious maltreatment determination disqualifies Reynolds from working in direct-care positions with a DHS-licensed program for seven years, Reynolds has a significant private interest impacted by the commissioner's action. *See id.* at 320 (recognizing that "an individual's interest in working in a chosen profession is not absolute" and that being disqualified only from working in state-regulated facilities is a "less restricted" but "significant" interest).[2] The first *Mathews* factor thus weighs in Reynolds's favor.

Reynolds argues that the second *Mathews* factor—risk of erroneous deprivation of rights—weighs in her favor because DHS's failure to subpoena the coworker prevented Reynolds from cross-examining the coworker about the altercation with the VA. *See Fosselman*, 612 N.W.2d at 462 (recognizing that the second *Mathews* factor requires the government to grant individuals the opportunity to cross-examine witnesses).

Reynolds relies heavily on *In re Expulsion of E.J.W. from Indep. Sch. Dist. No. 500*, 632 N.W.2d 775 (Minn. App. 2001), to support her contention. In *E.J.W.*, we affirmed an agency commissioner's determination that a school district denied a student procedural due

---

[2] Citing *Sweet*, DHS asserts that, although the first *Mathews* factor weighs in Reynolds's favor, the interest is "less restricted" because the disqualification only applies to state-regulated facilities and is for a seven-year period. 702 N.W.2d at 320. Reynolds does not appear to disagree with DHS's position that her private interest is "less restricted."

7

process at his expulsion hearing because the school district did not call certain witnesses who made statements about the student's alleged misconduct. 632 N.W. 2d at 780. But in *E.J.W.*, the school district not only failed to call the witnesses to testify, it also failed to identify the witnesses before the hearing. *Id.* at 779-80. In those circumstances, because the student was effectively precluded from cross-examining witnesses, we concluded that the risk of erroneous deprivation was "compelling." *Id.* at 781.

Unlike the situation in *E.J.W.*, here, Reynolds knew the identity of the coworker. *See Collins v. Comm'r of Minn. Dep't of Hum. Servs.*, No. A22-0877, 2023 WL 2566055, at *5 (Minn. App. Mar. 13, 2023) (distinguishing *E.J.W.* on this basis in a maltreatment and disqualification case).[3] DHS disclosed its witnesses before the hearing and Reynolds knew DHS did not plan on calling the coworker to testify. Reynolds subpoenaed other witnesses to testify at the hearing, but she did not subpoena the coworker.[4] Due process "does not mandate the [agency] to call witnesses only to enable [a party] to cross-examine them." *Wilhite v. Scott Cnty. Hous. & Redevelopment Auth.*, 759 N.W.2d 252, 259 (Minn. App. 2009).

Further, the record supports the commissioner's finding that the various statements given by the coworker about the altercation were consistent. *See Collins*, 2023 WL 2566055, at *5 (distinguishing *E.J.W.* on the basis that the witness's statements were

---

[3] Nonprecedential opinions are cited for their persuasive authority. *See* Minn. R. Civ. App. P. 136.01, subd. 1(c).

[4] At oral argument, Reynolds's counsel candidly admitted that nothing prevented Reynolds from subpoenaing the coworker.

"largely consistent"). And Reynolds was able to cross-examine the program manager and the DHS investigator about their interviews with the coworker and the substance of the coworker's statements. Therefore, DHS's failure to subpoena the coworker did not deprive Reynolds the opportunity to cross-examine witnesses and the second *Mathews* factor does not weigh in her favor.

Reynolds argues that the third *Mathews* factor—the government's interest—weighs in her favor because DHS could have subpoenaed the coworker without any significant administrative burden. But the third factor weighs the government's interest, not only its burden. *See Sawh*, 823 N.W.2d at 635 (quoting *Mathews*, 424 U.S. at 335). The government's interest in protecting vulnerable adults is weighty, as "the public policy of this state is to protect adults who, because of physical or mental disability or dependency on institutional services, are particularly vulnerable to maltreatment." Minn. Stat. § 626.557, subd. 1 (2024); *see also Sweet*, 702 N.W.2d at 321 (stating that "the governmental interest in protecting the public, especially vulnerable individuals . . . is of paramount importance"). Indeed, the commissioner is mandated to "give preeminent weight to the safety of each person served by the license holder, applicant, or other entities as provided in this chapter and to program integrity through protection of state and federal money supporting the program over the interests of the disqualified individual." Minn. Stat. § 245C.22, subd. 3 (2024). Additionally, "[t]he government . . . has an interest in saving time and money by reconsidering disqualifications quickly and efficiently, without . . . additional time [and] expenses." *Sweet*, 702 N.W.2d at 321. Considering the weighty governmental interests at stake, the third *Mathews* factor heavily favors the commissioner.

9

Balancing the three *Mathews* factors, we conclude that Reynolds has failed to show that her procedural-due-process rights were violated. Reynolds has a significant interest in being able to work in her chosen field. But there was minimal risk of an erroneous deprivation of her interest from DHS's failure to subpoena the coworker to testify at the hearing because Reynolds had notice and an opportunity to be heard at the hearing, was represented by counsel, knew the identity of the coworker and could have subpoenaed the coworker herself, and was able to cross-examine the witnesses who interviewed the coworker. And the government's interests in protecting vulnerable adults and in efficient maltreatment and disqualification proceedings is particularly weighty. Therefore, the commissioner's decision did not violate Reynolds's constitutional right to procedural due process.

**Hearsay**

Reynolds also argues that the commissioner's maltreatment decision improperly relied solely on the coworker's unreliable hearsay statements describing the altercation with the VA. The governing statute provides that "[t]he human services judge shall accept all evidence, except evidence privileged by law, that is commonly accepted by reasonable people in the conduct of their affairs as having probative value on the issues to be addressed at the hearing." Minn. Stat. § 256.0451, subd. 19 (2024). Reynolds acknowledges that hearsay is admissible at human-services hearings. But she contends that the commissioner's decision was based solely on hearsay and was therefore improper because "[t]he general rule is that in the absence of a special statute, an administrative agency cannot, at least over objection, rest its findings of fact *solely* upon hearsay evidence which

10

is inadmissible in a judicial proceeding." *State ex rel. Indep. Sch. Dist. No. 276 v. Dep't of Educ.*, 256 N.W.2d 619, 627 (Minn. 1977) (emphasis added) (quotation omitted).

Reynolds's argument is unavailing. Here, the commissioner did not rely "solely" on hearsay. *See id.* Photos of the VA's injuries were admitted into evidence and the program manager—who personally observed the injuries—testified that the VA's injuries were unlike the injuries the VA sustained when he injured himself on previous occasions and that they appeared to have been inflicted upon him. Further, "[o]nly where it appears that [the agency] clearly abused its discretion in relying upon inherently unreliable evidence, under the hearsay rule or otherwise, should the courts intervene." *Indep. Sch. Dist. No. 276*, 256 N.W.2d at 627. The commissioner's order specifically found that it did not consider the coworker's hearsay statements inadmissible because multiple witnesses who testified at the hearing corroborated the nature and content of the coworker's statements. The record therefore does not reflect that the statements were "inherently unreliable." *See id.* Finally, *Indep. Sch. Dist. No. 276* prohibits an agency from relying solely on inadmissible hearsay only "in the absence of a special statute." *Id.* Such a statute exists here. *See* Minn. Stat. § 256.0451, subd. 19 (authorizing HSJs to rely on "all evidence . . . that is commonly accepted by reasonable people in the conduct of their affairs as having probative value on the issues to be addressed at the hearing").

On this record, we discern no abuse of discretion in the commissioner's decision to rely, in part, on hearsay statements to determine that Reynolds seriously maltreated the VA. *See Indep. Sch. Dist. No. 276*, 256 N.W.2d at 627.

**II.    The commissioner's maltreatment determination is supported by substantial evidence.**

Reynolds argues that the commissioner's maltreatment determination is not supported by substantial evidence. We will affirm the commissioner's decision if it is supported by substantial evidence. *In re Excess Surplus Status of Blue Cross & Blue Shield of Minn.*, 624 N.W.2d 264, 279 (Minn. 2001). "[S]ubstantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and more than a scintilla, some, or any evidence." *In re NorthMet Project Permit to Mine Application*, 959 N.W.2d 731, 749 (Minn. 2021) (quotations omitted). To decide whether an agency decision is supported by substantial evidence, we must "determine whether the agency has adequately explained how it derived its conclusion and whether that conclusion is reasonable on the basis of the record." *Id.* (quotation omitted). We defer to the commissioner's findings regarding conflicts in testimony and the inferences drawn from testimony. *Blue Cross & Blue Shield*, 624 N.W.2d at 278. We also defer to the commissioner's credibility determinations. *Saif Food Mkt. v. Comm'r, State, Dep't of Health*, 664 N.W.2d 428, 431 (Minn. App. 2003).

A person is responsible for maltreatment if they abuse, neglect, or financially exploit a vulnerable adult. Minn. Stat. § 626.5572, subd. 15. The statute defines "abuse" as:

> [c]onduct which is not an accident or therapeutic conduct as defined in this section, which produces or could reasonably be expected to produce physical pain or injury or emotional distress including, but not limited to, the following: (1) hitting, slapping, kicking, pinching, biting, or corporal punishment of a vulnerable adult[.]

12

Minn. Stat. § 626.5572, subd. 2(b)(1). A person is disqualified from working in certain positions in DHS-licensed programs or facilities and other specified programs for seven years if it is determined they are responsible for "serious maltreatment," which is defined as "abuse resulting in serious injury," which includes "bruises, bites, skin laceration, or tissue damage." Minn. Stat. §§ 245C.02, subd. 18(a), (c), .14, subds. 1, 2, .15, subd. 4(b)(2) (2024).

Here, the commissioner determined that maltreatment occurred based on her finding that Reynolds abused the VA by pushing, slapping, and hitting him. Minn. Stat. § 626.5572, subd. 2(b)(1). The commissioner further determined that the maltreatment was "serious," requiring disqualification because it resulted in injuries including a skin laceration. Minn. Stat. §§ 245C.02, subd. 18, .15 subd. 4(b)(2) (2024). The commissioner's determination that Reynolds is responsible for serious maltreatment is supported by substantial evidence in the record, including photographs of the VA's injuries, the VA's statements, the coworker's consistent statements describing the altercation, and the program manager's descriptions of the demeanor of the VA and the coworker immediately after the incident.

Reynolds's argument on appeal largely relies on her own testimony denying any inappropriate conduct and on the VA's history of self-harm. But the commissioner found the coworker's testimony credible and we must defer to the commissioner's credibility determinations and her conclusions regarding conflicts in testimony. *See Blue Cross & Blue Shield*, 624 N.W.2d at 278; *Saif Food Mkt.*, 664 N.W.2d at 431. Therefore, the

commissioner adequately explained her determination, and the maltreatment determination is supported by substantial evidence in the record.

**III.    The commissioner's decision to not set aside the disqualification is supported by substantial evidence.**

Reynolds argues that the disqualification decision should be set aside because she met her burden of proving that she does not pose a risk of harm.  The commissioner may set aside a disqualification determination and allow the disqualified individual to work in a particular program or facility setting if the disqualified individual proves they do not pose a risk of harm to persons served by the program.  Minn. Stat. § 245C.22, subd. 4(a) (2024). In determining whether an individual poses a risk of harm, the commissioner considers the following nine factors:

> (1) the nature, severity, and consequences of the event or events that led to the disqualification;
> (2) whether there is more than one disqualifying event;
> (3) the age and vulnerability of the victim at the time of the event;
> (4) the harm suffered by the victim;
> (5) vulnerability of persons served by the program;
> (6) the similarity between the victim and persons served by the program;
> (7) the time elapsed without a repeat of the same or similar event;
> (8) documentation of successful completion by the individual studied of training or rehabilitation pertinent to the event; and
> (9) any other information relevant to reconsideration.

*Id.*, subd. 4(b) (2024).  Any single factor may be determinative.  *Id.*, subd. 3.  When considering whether to set aside a disqualification, the commission must give "preeminent

weight to the safety of each person served . . . over the interests of the disqualified individual." *Id.*

Reynolds contends that the commissioner's decision to not set aside the disqualification is not supported by substantial evidence, reiterating that she consistently denied committing maltreatment and that the VA's injuries were caused by his own behavior. For the reasons we have already explained, we must defer to the commissioner's resolution of conflicts in the evidence and its credibility determinations. The commissioner engaged in a thorough analysis of the statutory risk-of-harm factors and ultimately determined that the severity of the event precluded the disqualification from being set aside. Accordingly, the commissioner's decision not to set aside the disqualification is supported by substantial evidence in the record.

**Affirmed.**