EVERYTHING ETCHED,
INC., Appellant,

v.

SHAKOPEE TOWING,
INC., Respondent.

No. CX–01–490.

Court of Appeals of Minnesota.

Oct. 9, 2001.

Samuel A. McCloud, Richard P. Ohlenberg, McCloud & Boedigheimer, P.A., Shakopee, MN, (for appellant).

Kevin P. Staunton, Hinshaw & Culbertson, Minneapolis, MN, (for respondent).

Considered and decided by
TOUSSAINT, Chief Judge, KLAPHAKE
and HALBROOKS, Judges.

## OPINION

HALBROOKS, Judge

At the request of police, respondent towed and stored a vehicle owned by appellant. Respondent later sold the vehicle at an auction. Appellant argues that the district court erred by finding that Minn. Stat. § 168B.08 (2000), which regulates nonpublic and public impound lots differently, does not violate equal protection and substantive due process. Because the statute advances a legitimate governmental purpose, we affirm.

## FACTS

On September 29, 1999, respondent Shakopee Towing, Inc., towed a Dodge Stealth ("the vehicle") registered to appellant Everything Etched, Inc., at the request of the Prior Lake police department. On October 8, 1999, respondent notified appellant via certified mail that the vehicle had been towed, was being stored on respondent's premises, and would be auctioned off if appellant did not reclaim it within 45 days.

Appellant did not contact respondent until sometime in January 2000. By that time, respondent was beginning to prepare to auction off the vehicle. Appellant began negotiating with respondent's owner, DuWayne Ege, for return of the vehicle. After failing to reach an agreement with Ege, appellant filed a complaint against respondent and sought a temporary restraining order. On January 13, 2000, an ex parte temporary restraining order was issued based on appellant's assertion that respondent had not provided sufficient notice of its intent to sell the vehicle and retain the sale proceeds. On January 27, 2000, the district court dissolved the temporary restraining order on the ground that the notice was proper.

The parties resumed negotiations, and appellant offered respondent $3,500 for the return of the vehicle. On February 24, 2000, respondent rejected appellant's offer and submitted a counteroffer of $7,500. When appellant did not meet the asking price, respondent auctioned off the vehicle on March 30, 2000, and received $8,200. Respondent paid the auctioneer $185 and kept the remainder. Respondent also kept $483 that was found in the vehicle at the time it was impounded.

Following discovery, appellant moved for summary judgment on the ground that respondent failed to provide the second notice required by the statute. The district court denied the motion, ruling as a matter of law that a February 24, 2000 letter from respondent to appellant's counsel met the statutory second notice requirements.

On October 11, 2000, appellant moved the district court to declare the impound statute unconstitutional.[1] The court denied the motion, holding that appellant had failed to meet its burden of persuasion. The case proceeded to a jury trial, and ultimately, the jury returned a special verdict, finding that respondent did not convert appellant's vehicle. This appeal follows.

---

1. As required, appellant notified the attorney general that it intended to challenge the constitutionality of the impound statute, but the state declined to intervene at either the trial or appellate level. *See* Minn. R. Civ.App. P. 144 ("When the constitutionality of an act * * * is questioned in any appellate proceeding to which the state * * * is not a party, the party asserting the unconstitutionality of the act shall notify the attorney general * * *.").

## ISSUE

Does Minn.Stat. § 168B.08 (2000) violate the equal-protection or due-process clauses of the Minnesota and U.S. Constitutions?

## ANALYSIS

■ Appellant argues that the statute regulating impound lots ("the impound statute") violates equal protection and substantive due process because it differentiates between nonpublic and public impound-lot owners. *See* Minn.Stat. § 168B.011, subds. 11, 12 (2000); *see also* U.S. Const.amend. XIV, § 1 (equal protection and due process); Minn. Const. art. I, § 2 (equal protection). Appellant does not assert in this appeal that the impound statute results in an impermissible taking or that respondent failed to follow the statutory guidelines.

■ Because the constitutionality of a statute is a question of law, our review is de novo. *Estate of Jones by Blume v. Kvamme*, 529 N.W.2d 335, 337 (Minn. 1995). Appellant has a heavy burden of persuasion given that statutes enjoy a strong presumption of constitutionality. *Miller Brewing Co. v. State*, 284 N.W.2d 353, 356 (Minn.1979). Further, "our power to declare a statute unconstitutional should be exercised with extreme caution and only when absolutely necessary." *In re Haggerty*, 448 N.W.2d 363, 364 (Minn. 1989) (citation omitted).

■ We review both of appellant's claims under the same standard: if legislation does not violate equal protection, it does not violate substantive due process. *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 470 n. 12, 101 S.Ct. 715, 727 n. 12, 66 L.Ed.2d 659 (1981); *see also State v. Morrow*, 492 N.W.2d 539, 547 (Minn.

App.1992) (constitutional challenge under either due process or equal protection provisions of federal or state constitutions raises similar questions).[2] When a statute does not contain suspect classifications or impinge on fundamental rights, it only needs to be rationally related to a legitimate governmental purpose to withstand either an equal-protection or a substantive-due-process challenge. *Lukkason v. 1993 Chevrolet Extended Cab Pickup*, 590 N.W.2d 803, 806 (Minn.App.1999) (relying on *Hodel v. Indiana*, 452 U.S. 314, 331, 101 S.Ct. 2376, 2387, 69 L.Ed.2d 40 (1981)), *review denied* (Minn. May 18, 1999).

■ "Legislation will fail rational-basis review only when it rests on grounds irrelevant to the achievement of a plausible governmental objective." *Lukkason*, 590 N.W.2d at 806 (citing *Heller v. Doe*, 509 U.S. 312, 324, 113 S.Ct. 2637, 2645, 125 L.Ed.2d 257 (1993)). But unlike the federal courts, when Minnesota courts apply a rational-basis review, we are "unwilling to hypothesize a rational basis to justify a classification, as the more deferential federal standard requires." *State v. Russell*, 477 N.W.2d 886, 889 (Minn.1991). Therefore, Minnesota courts require the proponent of a statute's constitutionality to establish "a reasonable connection between the actual, and not just the theoretical, effect of the challenged classification and the statutory goals." *Id.*

Here, the statutory scheme for notifying an owner that his or her vehicle has been impounded is the same for both public and nonpublic impound lots. After a vehicle has been impounded, both types of lots must inform the registered owner within five days that the vehicle has been taken and may be reclaimed by paying all towing

---

2. Absent good reason, we apply federal interpretations to a state constitutional provision that has "almost identical" language to the federal version. *City of Pine Springs v. One 1992 Harley Davidson*, 555 N.W.2d 749, 752 (Minn.App.1996).

and storage fees. Minn.Stat. §§ 168B.06, subd. 1, .07, subd. 1 (2000). If the vehicle remains unclaimed after 30 days from the time that the first notice was sent, the statute requires public and nonpublic impound lots to send a second notice by certified mail, return receipt requested. Minn.Stat. § 168B.06, subd. 3 (2000). If the owner fails to respond within 45 days, an impound lot may dispose of the vehicle and its contents. Minn.Stat. § 168B.051, subd. 2 (2000).[3]

Once a vehicle has been sold, however, the statute treats public and nonpublic lots differently. After a nonpublic impound lot auctions off a vehicle, the impound lot

> may retain any proceeds derived from a sale * * *. The operator may retain all proceeds from sale of any personal belongings and contents in the vehicle that were not claimed by the owner * * * before the sale * * *.

Minn.Stat. § 168B.08, subd. 4 (2000). When a public lot sells an impounded vehicle, it can immediately "reimburse itself for the cost of towing, preserving and storing the vehicle, and all administrative, notice and publication costs incurred in handling the vehicle." Minn.Stat. § 168B.08, subd. 3 (2000). But a public entity must hold any profit for 90 days, a window of time during which the impounded vehicle's owner may claim the profit. *Id.* If the owner fails to claim the money during this time period, the remainder is deposited in the public treasury. *Id.*

Appellant argues that the difference in the way that public and nonpublic impound lots treat sale proceeds serves no legitimate governmental purpose. We start by looking at the statute's plain language to determine what the legislative intent was for differentiating between public and nonpublic impound lots. Minn.Stat. § 645.16 (2000). Because we cannot immediately discern why the legislature chose to draw this distinction, we turn to the legislative history. *See Weber v. Hvass,* 626 N.W.2d 426, 432 (Minn.App.2001), *review denied* (Minn. June 27, 2001); *cf.* Minn.Stat. § 645.16 (ascertaining legislative intent by considering the need for the law, the circumstances under which it was enacted, the consequences of an interpretation, contemporaneous legislative history, and the object to be attained).

The legislature amended the impound statute in 1995 and again in 1997 to address the concerns of municipalities, law-enforcement agencies, and private towing companies. The legislature noted that private towing companies contract with municipalities and law-enforcement agencies to provide towing and limited storage facilities. *Hearing on H.F. No. 586 Before the House Comm. on Transp.* (Mar. 1, 1995) (statement of Rep. Bertram). But these private companies were becoming de facto impound lots, because the impound statute did not contain language specifically regulating disposal of unclaimed vehicles. *Id.; see also* 1995 Minn. Laws ch. 137, § 4 (amending notice requirements to include nonpublic impound lots). Towing companies could not keep up with their contractual obligations because some individuals would not reclaim a vehicle if the towing and storage fees exceeded the vehicle's value. *Hearing on H.F. No. 586 Before the House Comm. on Transp.* (statements of Rep. Betram and of towing association members Joe Schroga, Todd Sewerts, and Renee Gardas). Vehicles that could not be sold or salvaged also posed an environmental hazard, as they often contained chemicals such as antifreeze, freon, and battery acid. *Id.* (statement of Joe Schroga). Ad-

---

**3.** Vehicles impounded by the cities of Minneapolis and St. Paul may be sold 15 days after notice to the owner. Minn.Stat. § 168B.051, subd. 1a (2000).

ditionally, the legislature heard testimony that towing companies were losing money when vehicles remained unclaimed because the companies were receiving remuneration for their services only from owners who reclaimed their vehicles. *Id.* (statements of Joe Schroga, Todd Sewerts, and Renee Gardas).

Several members of the legislature expressed concerns that "snowbirds" (Minnesotans who spend their winters in southern states) would not realize that their vehicles had been impounded and could be sold. *Id.* (statement of Rep. McElroy). But others observed that if an unclaimed vehicle required extensive repairs and had little resale value, a towing company might not recoup the cost of towing, storage, and disposal even if it could sell the vehicle. *Hearing on H.F. No. 586 Before the House Comm. on Commerce, Tourism, and Consumer Affairs* (Mar. 28, 1995) (statements of Renee Gardas and Rep. Mulder). To strike a balance between the concern that owners may not learn of towing immediately and the need to provide a means for disposing of unclaimed vehicles, the legislature added the notice provision to the impound statute. Based on the experiences of private towing companies and municipal impound lots, the legislature assumed that if a vehicle was usable and valuable, a reasonable owner would respond to the notice in a timely manner. *Hearing on H.F. No. 586 Before the House Comm. on Transp.* (statement of Rep. Bertram); *see also Hearing on S.F. No. 166 Before the Senate Comm. on Transp.* (Feb. 25, 1997) (statement of Sen. Kelly).

In light of the legislative history, we agree with the district court's determination that the impound statute serves a legitimate governmental purpose and is, therefore, constitutional. The purpose of the statute is to create a quick and orderly scheme to deal with abandoned vehicles that "constitute a hazard to the health and welfare of the people of the state." Minn. Stat. § 168B.01 (2000) (noting that abandoned vehicles "can harbor noxious diseases, furnish shelter and breeding places for vermin, and present physical dangers to the safety and well-being of children and other citizens"). The notice-and-disposal scheme alleviates overcrowding for nonpublic towing companies and provides them with a financial mechanism to recoup their costs.

Additionally, we disagree with appellant's contention that the legislature never contemplated that this situation might occur. The legislature intended to relieve nonpublic impound lots of the burden of disposing of unclaimed, abandoned vehicles. Recognizing that some owners would want to reclaim their vehicles, the legislature required that nonpublic towing companies send two notices to owners before disposing of a vehicle. Thus, the legislature recognized that not all impounded vehicles are "junk," and that individuals in appellant's situation are likely to claim their vehicles promptly so as to limit daily storage fees and avoid the potential loss of the vehicle through sale or auction. As the district court found, appellant received the required two notices, but did not respond in a timely fashion.

### DECISION

Minn.Stat. § 168B.08 (2000) serves a legitimate government purpose and is, therefore, constitutional.

**Affirmed.**