George Marita OBARA, Relator,

v.

MINNESOTA DEPARTMENT OF HEALTH, Respondent.

No. A08–0085.

Court of Appeals of Minnesota.

Dec. 23, 2008.

---

Glenn Bruder, Mitchell, Bruder & Johnson, Edina, MN, for relator.

Lori Swanson, Attorney General, Jocelyn F. Olson, Assistant Attorney General, St. Paul, MN, for respondent.

·Considered and decided by MINGE, Presiding Judge; SCHELLHAS, Judge; and CRIPPEN, Judge.*

## O P I N I O N

MINGE, Judge.

Relator challenges the decision of the Minnesota Commissioner of Health (commissioner) to refuse to reconsider his disqualification from working as a registered nurse in a state-licensed program. Relator argues that (1) he has a due process right to an evidentiary hearing to challenge his disqualification; (2) the basis for his disqualification was arbitrary and ca-pricious and violated his right to substantive due process; and (3) the bases for disqualification established by Minn.Stat. §§ 245C.14–.15 (2006) are constitutionally overbroad because they mandate employment disqualification for persons convicted of crimes that do not directly relate to patient safety. Because relator's due process rights have not been violated and we decline to consider relator's facial-overbreadth challenge, we affirm.

## FACTS

In October 2006, Champlin police were called to investigate a report that a male passenger in a vehicle was punching a female passenger. A witness reported that the male punched the female several times and pushed her out of the car, while traveling approximately 50 miles per hour. The male was later identified as relator George Marita Obara, and the female passenger was identified as his wife. Relator's wife informed the police that during the incident relator told her, "[y]ou know I can f——ing kill you right now." Relator's wife suffered severe abrasions on both elbows and a large abrasion on her abdomen as a result of the incident. Relator was charged with and convicted of making terroristic threats and third-degree assault, both felony offenses.

Relator is a registered nurse who, at the time of the incident, worked for a program licensed by respondent Minnesota Department of Health (MDH). Because relator's work involved direct contact with individuals served by these programs, the Department of Human Services (DHS) was required to conduct a background study on relator. This background study revealed

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

relator's two felony charges, both of which were for crimes that disqualified relator from working in MDH- or DHS-licensed programs for 15 years under Minn.Stat. §§ 245C.14–.15 (2006). DHS concluded that a "preponderance of evidence exists that [relator] committed an act or acts meeting the definition of assault in the third degree, a felony," and disqualified relator from employment that allowed direct contact with persons receiving services from programs licensed by DHS and MDH. Relator was subsequently convicted of both of the felony charges.

After MDH denied relator's request for reconsideration, relator requested a "fair hearing," which would allow him to continue his work pending the outcome of the hearing. That hearing was suspended pending the outcome of relator's appeal of his criminal convictions.[1] Subsequently, relator's employer requested that DHS perform another background study on relator. In response, a second background study was undertaken. Because the background study revealed relator's convictions, DHS again disqualified relator from having "direct contact with or access to persons receiving services" from programs licensed by DHS or MDH.

Relator asked MDH to reconsider this second disqualification decision, claiming that the information DHS relied on to disqualify him was incorrect. Relator claimed that the claimed criminal incident was a non-physical argument and that his wife "fell out of the car." Relator wrote, "I believe some aspects of the incident are not accurately described in the complaint and police report, but concede that my behavior contributed to the dispute with my wife and the entire incident was unfor-

tunate and could have been avoided." He submitted no other information or evidence addressing whether he had been properly convicted of the two felonies. MDH denied relator's request without granting him an evidentiary hearing to challenge his disqualification. Relator challenges that MDH denial in this certiorari appeal.

## ISSUES

I. Was relator entitled to an evidentiary hearing to challenge his disqualification?

II. Was relator's disqualification arbitrary and capricious in violation of his substantive due process rights?

III. Are Minn.Stat. §§ 245C.14–.15 unconstitutionally overbroad?

## ANALYSIS

### I.

■ Relator argues that his disqualification without an oral hearing violates his right to procedural due process of law. "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge,* 424 U.S. 319, 332, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (1976). "The due process protection provided under the Minnesota Constitution is identical to the due process guaranteed under the Constitution of the United States." *Sartori v. Harnischfeger Corp.,* 432 N.W.2d 448, 453 (Minn.1988). To determine whether an individual's right to

---

1. Relator's convictions were affirmed by this court on November 4, 2008. *State v. Obara,* No. A07–1689, 2008 WL 4777260 (Minn.App. Nov. 4, 2008).

procedural due process has been violated, a reviewing court first determines whether a protected liberty or property interest is implicated and then determines what minimum procedures must be afforded by applying a balancing test. *Mathews,* 424 U.S. at 332, 335, 96 S.Ct. at 901, 903. The *Mathews* balancing test requires this court to consider: (1) the private interest that will be affected by the governmental action; (2) the risk of erroneous deprivation of this interest through the procedures used and the probable value of additional or substitute procedural safeguards; and (3) the government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substantive procedural requirements would entail." *Id.* at 335, 96 S.Ct. at 903.

■ Before applying the *Mathews* balancing test, we determine whether relator had a protected interest in his employment. In *Sweet v. Comm'r of Human Servs.,* we observed that "an individual has a property and liberty interest in pursuing private employment" and concluded that a counselor who was disqualified only from working in state-regulated facilities had "a property interest to pursue employment [in his profession] in the public sector." 702 N.W.2d 314, 320 (Minn.App.2005), *review denied* (Minn. Nov. 15, 2005). As with the counselor in *Sweet,* relator's disqualification restricts his ability to pursue his nursing career in the public sector. We conclude that relator has a protected property interest in pursuing his nursing career and proceed to apply the *Mathews* balancing test to relator's claim.

■ *Mathews* requires that we weigh the procedures used to disqualify relator, the potential risk of an erroneous decision, and the probable value, if any, of an oral hearing. *See id.* In *Sweet,* we held that the counselor's opportunity to submit his written case to the commissioner, along with any supporting documents, satisfied his "right to be heard." *Id.* at 321. But we distinguished *Sweet* from *Fosselman v. Comm'r of Human Servs.,* 612 N.W.2d 456, 462 (Minn.App.2000), in which the evidence supporting a disqualification decision was in dispute, and from *Goldberg v. Kelly,* 397 U.S. 254, 260, 90 S.Ct. 1011, 1016, 25 L.Ed.2d 287 (1970), in which eligibility for welfare benefits was in dispute. In both of the latter two cases, the appellants were held to be entitled to oral hearings.

The U.S. Supreme Court concluded in *Goldberg* that written submissions "do not afford the flexibility of oral presentations" and are "a wholly unsatisfactory basis for decision" where credibility is at issue, as it is in welfare termination proceedings. 397 U.S. at 269, 90 S.Ct. at 1021. We applied this analysis to disqualification proceedings in *Fosselman* and observed that disqualification proceedings "may be as fact-intensive as welfare termination proceedings" and that credibility "is no less important in disqualification proceedings" than in welfare termination proceedings. 612 N.W.2d at 463. But in *Sweet,* we stated that where an appellant has been "afforded the full panoply of rights in the criminal proceedings leading up to his convictions," his procedural due process rights have been satisfied. 702 N.W.2d at 321. The third *Mathews* factor evaluates the government's interests. "[T]he governmental interest in protecting the public, especially vulnerable individuals … is of paramount importance." *Id.* "The government also has an interest in saving time and money by reconsidering disqualifications quickly and efficiently…." *Id.*

In requesting reconsideration, relator used a form provided by DHS. Among

other questions, the form instructed him to provide evidence showing that the information used to disqualify him was incorrect. The only evidence relator provided with his reconsideration request was a narrative that included his recollection of the incident, his description of the factors that influenced his behavior, and his description of steps he has taken to improve his behavior. Importantly, relator does not assert that he had any evidence of his innocence that he had not had an opportunity to present in his criminal proceedings. The criminal trial was an evidentiary hearing. Because relator's convictions required proof of guilt beyond a reasonable doubt, he was afforded due process of law incident to a criminal proceeding. This minimized the risk of an erroneous decision. With this minimized risk and the burden of holding duplicative evidentiary hearings, we conclude that procedural due process does not require that DHS provide relator an evidentiary hearing on his disqualification.

## II.

Relator also argues that Minn. Stat. §§ 245C.14–.15 (2006) violate his constitutional right to substantive due process. Because these statutes compelled his disqualification based solely on his criminal convictions and left the commissioner no discretion to consider the facts of his case, relator argues they are arbitrary and capricious in their effect. The constitutionality of a statute is a question of law subject to de novo review. *Hamilton v. Comm'r of Pub. Safety*, 600 N.W.2d 720, 722 (Minn.1999). Statutes enjoy a strong presumption of constitutionality. *Everything Etched, Inc. v. Shakopee Towing, Inc.*, 634 N.W.2d 450, 453 (Minn.App.2001), *review denied* (Minn. Dec. 11, 2001). But due process demands that a statute not be "an unreasonable, arbitrary or capricious interference" and requires at minimum that the statute "bear a rational relation to the public purpose sought to be served." *Contos v. Herbst*, 278 N.W.2d 732, 741 (Minn.1979).

A "vital part of a state's police power" is to regulate "all professions concerned with health." *Barsky v. Bd. of Regents of Univ.*, 347 U.S. 442, 449, 74 S.Ct. 650, 654, 98 L.Ed. 829, (1954) (*cited with approval in Humenansky v. Minn. Bd. of Med. Exam'rs*, 525 N.W.2d 559, 566 (Minn.App.1994)), *review denied* (Minn. Feb. 14, 1995). "[B]efore a reviewing court can hold that an exercise of the police power ... is unconstitutional, it must find that the exercise has no substantial relationship to public health, safety, morals, or general welfare." *Pomrenke v. Comm'r of Commerce*, 677 N.W.2d 85, 92 (Minn.App.2004). For example, the "right to practice medicine is not absolute. It is subject to strict regulation under the state's police power." *Humenansky*, 525 N.W.2d at 566, 567 ("When a conflict arises between a physician's right to pursue a medical profession and the state's right to protect its citizenry, the physician's right must yield to the state's power to prescribe reasonable rules and regulations in order to protect the state's people from incompetent and unfit practitioners.").

The public purpose of Chapter 245C is to protect the health and safety of individuals who are vulnerable due to their age or their physical, mental, cognitive, or other disabilities. *See* Minn.Stat. § 245C.22, subd. 3 (2006) (providing that, in reviewing a reconsideration request, "the commissioner shall give preeminent weight to the safety of each person served by the license holder ... over the interests of the dis-

qualified individual"); *Sweet,* 702 N.W.2d at 321 (citing Minn.Stat. § 245C.22, subd. 3, as indicative of the government's interest in protecting vulnerable individuals). In *Sweet,* we held this interest to be of "paramount importance." 702 N.W.2d at 321.

▮ Relator claims that under Minn. Stat. §§ 245C.14–.15, an individual could escape disqualification by negotiating a stayed sentence, and thus the statute arbitrarily and capriciously "places licensees at the mercy of the vicissitudes of" criminal prosecutors. Relator misreads the statutes. The law states that a disqualification period begins on "the discharge of the sentence imposed, *if any,* for the offense." Minn.Stat. § 245C.15 (emphasis added). By the plain language of the statute, a conviction alone for a listed offense mandates disqualification whether a sentence is imposed or not. Even more significantly, a conviction is not necessary. The statutes provide for disqualification for "(1) a conviction of [or] admission to . . . one or more crimes listed . . .; (2) a preponderance of the evidence indicates the individual has committed an act or acts that meet the definition of the crimes listed. . . ." Minn.Stat. § 245C.14, subd. 1.

Relator also argues that there is no legitimate basis for assuming that a disqualified individual cannot rehabilitate himself before the disqualification period expires. But relator ignores that portion of the statute that allows a disqualified individual to show that he has been rehabilitated and can be trusted to have direct contact with patients, who are generally vulnerable individuals. Minn.Stat. § 245C.22, subd. 4 (2006). Because of this right to request relief from disqualification, the statute does not arbitrarily and capriciously deny relator of his occupation.

## III.

▮ Finally, relator argues that the disqualification provisions of Minn.Stat. §§ 245C.14–.15 are overly broad on their face because they mandate the disqualification of individuals for behavior which has little, if any, relationship to patient safety. This differs from the previous issue in that, to show that the statutes are overbroad, relator must show that they intrude on a protected freedom. "[A] governmental purpose to control or prevent activities constitutionally subject to state regulation may not be achieved by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms." *Griswold v. Connecticut,* 381 U.S. 479, 487, 85 S.Ct. 1678, 1682, 14 L.Ed.2d 510 (1965) (quotation omitted). With the exception of statutes that purport to regulate First Amendment rights, "it is no defense that the statute would be unconstitutionally vague or broad if conceivably it could also be interpreted 'as applying to other persons or other situations in which its application might be unconstitutional.'" *State v. Hipp,* 298 Minn. 81, 86, 213 N.W.2d 610, 614 (1973) (quoting *United States v. Raines,* 362 U.S. 17, 21, 80 S.Ct. 519, 522, 4 L.Ed.2d 524 (1960)).

Here, the question is whether the felonies of which relator was convicted (third-degree assault and making terroristic threats) bear any relationship to patient safety. Because the population served by nurses is largely composed of infirm or otherwise vulnerable people, the state has an obvious interest in preventing professionals guilty of assaultive behavior from working with them. As a result, we conclude that relator's disqualification based on convictions of these felonies does not "sweep unnecessarily broadly." We need not and decline to address relator's argu-

ment that Minn.Stat. § 245C.15 lists other crimes that allegedly do not relate to patient safety, except to note that relator was not disqualified for convictions of any of these crimes. We therefore decline to further consider relator's argument that Minn.Stat. §§ 245C.14–.15 are unconstitutionally overbroad.

## DECISION

Because relator has already had an evidentiary hearing to determine his challenge to his felony convictions, relator's procedural due process rights are satisfied. Relator has not shown that the statutes mandating his disqualification were arbitrary and capricious or that they were overbroad as applied to him. Therefore, we affirm.

**Affirmed.**