*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1755**

George Marita Obara,
Relator,

vs.

Commissioner of Human Services,
Respondent.

**Filed July 27, 2015
Affirmed
Reyes, Judge**

Minnesota Department of Human Services

Erik F. Hansen, Burns & Hansen, P.A., Minneapolis, Minnesota (for relator)

Lori Swanson, Attorney General, Anne Fuchs, Assistant Attorney General, St. Paul, Minnesota (for respondent)

Considered and decided by Larkin, Presiding Judge; Reilly, Judge; and Reyes, Judge.

**U N P U B L I S H E D   O P I N I O N**

**REYES**, Judge

On appeal, relator argues that his disqualification from working in facilities licensed by the Minnesota Department of Human Services (DHS) was not supported by substantial evidence in the record and violated his due-process rights. We affirm.

**FACTS**

In 2007, relator George Marita Obara was convicted of two felonies, third-degree assault and terroristic threats. These convictions arose out of a domestic dispute that took place in 2006, in which relator hit his wife several times and threatened her while they were in a moving vehicle together. *State v. Obara*, No. A07-1689, 2008 WL 4777260, at *1 (Minn. App. Nov. 4, 2008). Relator's wife fell out of the passenger side of the vehicle as it was traveling at a speed of 50 miles per hour. *Id.* She suffered several substantial injuries as a result. *Id.*

At the time of the incident, relator worked for a program licensed by the Minnesota Department of Health (MDH), which required background studies conducted by DHS. *Obara v. Minn. Dep't. of Health*, 758 N.W.2d 873, 876 (Minn. App. 2008). Based on his convictions, relator was disqualified from his employment as a registered nurse. *Id.* at 877. Both of relator's convictions are offenses which disqualify him from working in MDH- or DHS-licensed programs for 15 years. *See* Minn. Stat. §§ 245C.14-.15 (2014). Relator appealed, and we upheld his disqualification. *Obara*, 758 N.W.2d at 881.

Despite this, relator successfully requested that his disqualification be set aside so that he could work for two agencies licensed by MDH, Caring Nurses LLC in August 2010, and Compassionate Care Network LLC in November 2010. In December 2010, relator was discharged from probation and his felony convictions were reduced to misdemeanors, shortening the length of his disqualification period to seven years. *See*

2

Minn. Stat. § 245C.15, subd. 4 (2014). Relator's disqualification was subsequently set aside for a position at Communities of Care, which is also a MDH-licensed agency.

In May 2014, DHS notified relator that a new background study request was submitted by four separate DHS-licensed agencies: Robland Home Care Corporation, Family Quality Care, Inc., Vizion One, Inc., and Multicultural Adult Daycare Services, LLC. Relator received a letter indicating that he was disqualified from positions with these agencies based on his 2007 convictions. Relator requested reconsideration, arguing that he did not pose a risk of harm. The Minnesota Commissioner of Human Services (the commissioner) denied this request.

In her analysis, the commissioner looked to the nine factors listed in Minn. Stat. § 245C.22, subd. 4(b) (2014), and concluded that relator posed a risk of harm. With respect to the eighth factor entitled "documentation of successful completion by the individual . . . of training or rehabilitation pertinent to the [disqualifying] event," the commissioner determined that relator's subsequent conviction for careless driving following his arrest for suspicion of driving while intoxicated "call[ed] into question the efficacy of the chemical health education training" that relator completed pursuant to his probation. The commissioner also considered relator's conviction for disorderly conduct in 2012, where it took the assistance of three security officers to escort relator out of a location, to conclude that relator's "combativeness demonstrates that [he] continue[s] to have anger issues."

As to the ninth factor—"any other information relevant to reconsideration"—the commissioner noted:

3

> Since your convictions [in 2007], you have had several driving offenses, in addition to the 2012 disorderly conduct offense. Moreover, on July 8, 2014, you were charged with hit and run to property . . . . Although these offenses are not disqualifications, they demonstrate your disregard of the law and are relevant to whether you pose a risk of harm.

Additionally, the commissioner stated that relator did not appear to take responsibility for his actions that were the basis for the convictions in 2007, as evidenced by the minimization of his wife's injuries and his version of events that is inconsistent with his conviction. The commissioner found eight of the nine risk factors determinative and affirmed the disqualification. This certiorari appeal follows.

## D E C I S I O N

## I.

The DHS is required to conduct a background study on anyone applying to work in a facility licensed by the DHS or the MDH. Minn. Stat. § 144.057, subd. 1 (2014); Minn. Stat. § 245C.03, subd. 1 (2014). If the DHS determines that an individual has been convicted of or has admitted to a crime listed in Minn. Stat. § 245C.15 (2014), the commissioner must disqualify that individual from providing direct services. Minn. Stat. § 245C.14, subd. 1(a)(1) (2014).

"An individual who is the subject of a disqualification may request a reconsideration of the disqualification" in writing within 30 days of receipt of the disqualification notice. Minn. Stat. § 245C.21, subds. 1, 1a(c) (2014). "The disqualified individual requesting reconsideration must submit information showing that . . . [he] does not pose a risk of harm to any person served by the applicant . . . ." *Id.*, subd. 3(a)(3)

4

(2014). If the commissioner determines that "the individual has submitted sufficient information to demonstrate that [he] does not pose a risk of harm to any person served," the commissioner may set aside the disqualification. Minn. Stat. § 245C.22, subd. 4(a) (2014).

When considering an individual's request on reconsideration to set aside his disqualification, the commissioner is statutorily required to weigh nine different factors with regard to the particular position within which the individual seeks to work. Minn. Stat. § 245C.22, subd. 4(b). These factors include

> (1) the nature, severity, and consequences of the event or events that led to the disqualification;
> (2) whether there is more than one disqualifying event;
> (3) the age and vulnerability of the victim at the time of the event;
> (4) the harm suffered by the victim;
> (5) vulnerability of persons served by the program;
> (6) the similarity between the victim and persons served by the program;
> (7) the time elapsed without a repeat of the same or similar event;
> (8) documentation of successful completion by the individual studied of training or rehabilitation pertinent to the event; and
> (9) any other information relevant to reconsideration.

*Id.*

These factors are not intended to serve as a checklist, and the commissioner's decision on whether to set aside an individual's disqualification may be based on "any single factor." Minn. Stat. § 245C.22, subd. 3 (2014). Moreover, the commissioner is required to "give preeminent weight to the safety of each person served by the . . . applicant . . . over the interests of the disqualified individual." *Id.*

5

The denial of relator's set-aside request is a final administrative-agency action subject to certiorari review. *Rodne v. Comm'r of Human Servs.*, 547 N.W.2d 440, 444 (Minn. App. 1996). On appeal, this court examines the record to determine whether the commissioner's decision "was arbitrary, oppressive, unreasonable, fraudulent, under an erroneous theory of law, or without any evidence to support it." *Anderson v. Comm'r of Health*, 811 N.W.2d 162, 165 (Minn. App. 2012) (quotation omitted), *review denied* (Minn. Apr. 17, 2012). "Judicial review presumes the correctness of an agency decision." *In re Claim for Benefits by Meuleners*, 725 N.W.2d 121, 123 (Minn. App. 2006). The party challenging the agency's decision bears the burden of proving that the decision was improperly reached. *City of Moorhead v. Minn. Pub. Utils. Comm'n*, 343 N.W.2d 843, 849 (Minn. 1984).

This court will sustain the agency's decision if it is supported by substantial evidence. Minn. Stat. § 14.69(e) (2014); *Meuleners*, 725 N.W.2d at 123. Substantial evidence means: "1) such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; 2) more than a scintilla of evidence; 3) more than 'some evidence'; 4) more than 'any evidence'; and 5) evidence considered in its entirety." *Reserve Mining Co. v. Herbst*, 256 N.W.2d 808, 825 (Minn. 1977).

Relator argues that the commissioner's decision is unsupported and arbitrary because the commissioner used non-disqualifying offenses,[1] such as his arrests and

---

[1] An individual is disqualified from providing direct services if he has been convicted of a crime listed in Minn. Stat. § 245C.15. Minn. Stat. § 245C.14, subd. 1(a)(1). Careless driving and disorderly conduct are characterized as "non-disqualifying" offenses as they are not offenses specified in section 245C.15. *See* Minn. Stat. § 245C.15.

convictions for careless driving and disorderly conduct that occurred after his 2007 conviction, as a basis for the determination without providing any rationale between the non-disqualifying offenses and the risk of harm posed by relator.[2]  We disagree.

With respect to whether relator successfully completed training or rehabilitation pertinent to the disqualifying event, the commissioner noted that relator's conviction of careless driving subsequent to his arrest for DWI called into question the "efficacy of the chemical health education training" that was required by probation.  As to the conviction for disorderly conduct, which required the assistance of three security officers to remove him from a location, the commissioner found that it was demonstrative of relator's continued anger issues and combativeness.  The commissioner went on to explain that relator posed a risk of harm because the clients served by relator have a "wide range of individual needs and may present extensive challenging behavior to their caregivers." Thus, contrary to relator's assertion, the commissioner did give consideration to the nature of the underlying new, non-disqualifying offenses and the risk of harm posed by relator in making its decision.  We conclude that the commissioner's determination is not arbitrary or capricious and is supported by substantial evidence.

Relator also asserts that the commissioner inappropriately considered his non-disqualifying offenses to conclude that his general "disregard of the law" was relevant to

_____

[2] In his brief, relator argues that the commissioner abused its discretion by rescinding a previously granted set-aside absent new evidence that relator posed a risk of harm. However, during oral argument relator acknowledged that the commissioner's decision did not rescind any previously granted set-asides and rather it was a denial of a request to set aside his disqualification.  Thus, we need not address relator's argument related to that issue.

whether he posed a risk of harm. However, as discussed above, the commissioner properly considered the non-disqualifying offenses in connection to appellant's underlying conduct. Thus, this argument lacks merit.

Finally, relator argues that the commissioner's finding that relator's wife was vulnerable at the time of the assault is "patently false" because there is no evidence in the record to support this. In its decision, the commissioner noted that although she was an adult, relator's wife was vulnerable at the time of the incident given the fact that she fell out of a moving vehicle at 50 miles per hour while relator was threatening to kill her. This finding is supported by the record and the commissioner's conclusion based on this finding is reasonable. Moreover, relator's argument ignores the rule that *any single factor* may be determinative in making the commissioner's decision. *See* Minn. Stat. § 245C.22, subd. 3. Here, the commissioner found numerous risk factors to be determinative. In sum, the commissioner's decision is not arbitrary or capricious and is adequately supported by substantial evidence.

**II.**

Relator contends that the commissioner was required to hold an evidentiary hearing on his request for reconsideration and that the failure to do so violated relator's procedural due-process rights. "The due process protection provided under the Minnesota Constitution is identical to the due process guaranteed under the Constitution of the United States." *Sartori v. Harnischfeger Corp.*, 432 N.W.2d 448, 453 (Minn. 1988). To determine whether an individual's right to procedural due process has been violated, a reviewing court first determines whether a protected liberty or property

8

interest is implicated and then determines what minimum procedures must be afforded by applying a balancing test. *Sweet v. Comm'r of Human Servs*., 702 N.W.2d 314, 319 (Minn. App. 2005) (citing *Mathews v. Eldridge*, 424 U.S. 319, 332, 335, 96 S. Ct. 893, 901, 903 (1976)), *review denied* (Minn. Nov. 15, 2005).

The *Mathews* balancing test requires us to consider: (1) the private interest that will be affected by the governmental action; (2) the risk of erroneous deprivation of this interest through the procedures used and the probable value of additional or substitute procedural safeguards; and (3) the government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substantive procedural requirements would entail." *Obara*, 758 N.W.2d at 878 (citing *Mathews*, 424 U.S. at 335, 96 S. Ct. at 903). Procedural-due-process claims are reviewed de novo. *Thompson v. Comm'r of Health*, 778 N.W.2d 401, 403-04 (Minn. App. 2010).

**A.     Private interest**

In *Sweet*, we stated that "[e]mployment in an individual's chosen field is significant and weighs heavily in the individual's favor." 702 N.W.2d at 320. Relator obtained a bachelor's degree in nursing following the 2007 convictions and is currently enrolled in a program to obtain a master's degree in nursing. Admittedly, the commissioner's decision disqualified relator from working in the four facilities licensed by the DHS. However, the commissioner's decision did not affect any of relator's previous set-asides.[3] And there is no indication from the record that relator would not be

---

[3] It should be noted that, although DHS performs background checks on both MDH- and DHS-licensed facilities, the agencies make independent and separate eligibility

9

able to continue working in facilities licensed by MDH, or that the commissioner's decision would affect positions with future employers licensed by MDH. Moreover, there is no indication that this would prevent relator from seeking set-asides in the future. This factor does not weigh in favor of relator.

**B.** **Risk of erroneous deprivation and value of additional safeguards**

A person seeking reconsideration has the burden of proof to show that he does not pose a risk of harm. Minn. Stat. § 245C.22, subd. 4. In *Sweet*, we determined that a relator's due-process rights were not prejudiced when he had the "unfettered right to present all evidence, including letters of support, that he thought the commissioner should consider in his written submission." 702 N.W.2d at 321. We reach the same conclusion here. Relator had the opportunity to submit written materials to the commissioner before the decision was made, and indeed he did. In his request for reconsideration, relator submitted a separate document that was almost identical to previous ones he submitted, that provided extensive information relevant to the commissioner's decision. Relator has not demonstrated that he would have presented additional evidence if there was a hearing.

Relator cites *Thompson* to argue that a contested hearing was required because the ultimate issue involved a credibility determination. In *Thompson*, the relator had no conviction and thus there was no prior adjudication which the commissioner could rely upon to "lessen the risk of an erroneous determination." 778 N.W.2d at 408. Because credibility and veracity were at issue, this court determined that "[a]n evidentiary hearing

determinations. For facilities licensed by MDH, the commissioner of health reviews requests for reconsideration, and the commissioner's decision "is the final administrative agency action." Minn. Stat. § 144.057, subd. 3 (2014).

10

would be highly valuable and written submissions were a 'wholly unsatisfactory basis for decision.'" *Id.* The evidence relied upon by the commissioner in relator's case—the 2007 offenses and subsequent offenses—were all adjudicated and had credibility and veracity determinations made, resulting in guilty convictions. There were police reports in the record for the commissioner to review. Contrary to relator's assertion, there were no further credibility determinations to be made, and the commissioner's decision did not include one. The risk in *Thompson* of an erroneous deprivation requiring an evidentiary hearing is not present in this case.

Relator argues that the commissioner's determination on whether relator posed a risk of harm "is ultimately a credibility determination." However, it is well-established that a person's request for reconsideration does not require an evidentiary hearing and that a request for reconsideration always requires the commissioner to make a determination on whether an applicant poses a risk of harm. Relator's argument is without merit and this factor does not weigh in his favor.

### C. Government's interest

Relator does not address the third prong and concedes that it is not at issue. A party that inadequately briefs an argument waives that argument. *Brodsky v. Brodsky*, 733 N.W.2d 471, 479 (Minn. App. 2007). This factor does not weigh in relator's favor. Based on the overall balance of the *Mathews* factors, we conclude that an evidentiary hearing was not required and relator's procedural due-process rights were not violated.

**Affirmed.**

11