*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A25-0869**

Shawnnise Watkins,
Relator,

vs.

Minnesota Department of Human Services,
Respondent.

**Filed January 26, 2026
Affirmed
Bentley, Judge**

Minnesota Department of Human Services

Shawnnise Watkins, Minneapolis, Minnesota (self-represented relator)

Keith Ellison, Attorney General, R.J. Detrick, Assistant Attorney General, St. Paul, Minnesota (for respondent)

Considered and decided by Schmidt, Presiding Judge; Bratvold, Judge; and Bentley, Judge.

**NONPRECEDENTIAL OPINION**

**BENTLEY**, Judge

Relator appeals by certiorari a decision of the Minnesota Department of Human Services (DHS) permanently disqualifying her from providing direct-contact services following its background study. We discern no basis to reverse DHS's decision and therefore affirm.

# FACTS

DHS received a request from Trust Home Care LLC, in early 2025, to conduct a background study on relator Shawnnise Watkins. Watkins explains in her brief that she was attempting to become a personal care assistant (PCA) for her child. In conducting the background study, DHS received criminal-history data from the Bureau of Criminal Apprehension (BCA) showing that, in 2011, when Watkins was 17 years old, she was adjudicated delinquent for second-degree aggravated robbery under Minnesota Statutes section 609.245, subdivision 2 (2010). DHS also obtained the register of actions from the Hennepin County Juvenile Court, which confirmed that Watkins was adjudicated delinquent for aggravated robbery in 2011.

After receiving that information from the BCA and the court, DHS notified Watkins that, based on its background study, she was disqualified "from providing direct contact services, or having access to people who receive services" because of her 2011 juvenile adjudication. DHS explained that the juvenile adjudication "is considered a conviction for background study purposes." The notice further stated that the disqualification was permanent, and that DHS is "prohibited from setting aside or granting a variance for this disqualification."

Watkins submitted a request for reconsideration. In a letter accompanying the request, she challenged the use of her juvenile record, requested DHS complete a risk-of-harm assessment, and requested copies of the records used in her disqualification.

DHS sent a letter in response, stating, "The Commissioner has determined you were correctly disqualified." The letter explained that, because the disqualification is permanent

2

and may not be set aside, a risk-of-harm assessment is inapplicable to her circumstances. DHS also provided Watkins with a copy of the records it reviewed.

Watkins appeals.

## DECISION

Before we turn to Watkins's arguments, we provide a brief overview of the statutory framework relevant to the issues on appeal and explain our standard of review on a writ of certiorari.

The Minnesota Department of Human Services Background Studies Act is designed "to ensure the safety of the people who use DHS-licensed facilities." *Jackson v. Comm'r of Hum. Servs.*, 933 N.W.2d 408, 411 (Minn. 2019). To further that purpose, the act requires DHS to investigate and "disqualify an individual" from holding certain positions "if that individual has a background that indicates a potential risk" to persons who receive services through licensed entities. *Id.*

The statute specifies that, when conducting a background study, DHS "shall review," among other things, "information from juvenile courts as required for studies under this chapter when there is reasonable cause" and "information from the [BCA]." Minn. Stat. § 245C.08, subd. 1(a)(3)-(4) (2024). Addressing the use of juvenile court records specifically, the statute provides that DHS "shall review records from the juvenile courts for an individual studied under this chapter when the [DHS] has reasonable cause." *Id.*, subd. 4(a) (2024). The statute also requires that juvenile courts shall facilitate the study "by giving [DHS] existing juvenile court records relating to delinquency proceedings . . . when requested[.]" *Id.*, subd. 4(b) (2024). The statute further provides that,

3

"notwithstanding expungement by a court, [DHS] may consider information obtained" from juvenile courts or the BCA "unless . . . [DHS] received notice of [a] petition for expungement and the court order for expungement is directed specifically to [DHS.]" *Id.*, subd. 1(b)(1) (2024).

After reviewing the requisite records, DHS "shall disqualify" an individual from

> any position allowing direct contact with persons receiving services . . . upon receipt of information showing, or when a background study completed under this chapter shows any of the following:
> > (1) a conviction of, admission to, or Alford plea to one or more crimes listed in section 245C.15, regardless of whether the conviction or admission is a felony, gross misdemeanor, or misdemeanor level crime[.]

Minn. Stat. § 245C.14, subd. 1(a)(1) (2024). The statute includes the crime of aggravated robbery under Minnesota Statutes section 609.245 in the list. Minn. Stat. § 245C.15, subd. 1(a) (2024). It also clarifies that, for the purpose of these background studies, "a finding that a delinquency petition is proven in juvenile court shall be considered a conviction in state district court." Minn. Stat. § 245C.08, subd. 4(c) (2024).

A disqualified individual "may request a reconsideration of the disqualification" within 30 days after receiving notice and "must submit" information showing that the information relied on by [DHS] in its determination is incorrect or that they do "not pose a risk of harm to any person served by the applicant[.]" Minn. Stat. § 245C.21, subds. 1, 2(a), 3(a)(1), (3) (2024). DHS "shall rescind the disqualification" if the information relied upon in the disqualification was incorrect or "may set aside the disqualification if [DHS] finds that the individual has submitted sufficient information to demonstrate that the individual

4

does not pose a risk of harm to any person served by the applicant[.]" Minn. Stat. § 245C.22, subds. 2, 4(a) (2024). A separate section of the statute provides, however, that DHS "may not set aside the disqualification of any individual . . . regardless of how much time has passed, if the individual was disqualified for a crime or conduct listed in section 245C.15, subdivision 1." Minn. Stat. § 245C.24, subd. 2(a) (2024).

Turning to our standard of review, a DHS disqualification decision is "a quasi-judicial agency decision." *Jackson*, 933 N.W.2d at 413. Appellate courts review quasi-judicial agency decisions by writ of certiorari, and our review is confined to questions of jurisdiction, the regularity of the proceedings, and whether the decision on the merits is "arbitrary, oppressive, unreasonable, fraudulent, under an erroneous theory of law, or without any evidence to support it." *Id.* (quotation omitted).

We now consider Watkins's arguments. We understand her to be challenging her disqualification on three grounds. First, Watkins argues that her 2011 juvenile adjudication is not a proper basis for her disqualification. Second, Watkins contends that, regardless of the juvenile adjudication, her disqualification should be set aside because she does not pose a genuine safety risk. Third, Watkins briefly argues that DHS failed to provide her a hearing under Minnesota Statutes section 256.045 (2024), violating her due-process rights. We address each issue in turn.

**I**

Watkins first argues that it was unlawful for DHS to disqualify her based on her juvenile adjudication because the BCA records should have been destroyed in 2022, when

she turned 28. Watkins does not contest the accuracy or correctness of the juvenile adjudication record.

In support of her argument, Watkins relies on Minnesota Statutes section 299C.095, subdivision 2(e) (2024), which states that, in the case of "a child who was found to have committed a felony or gross misdemeanor-level offense," the BCA "must . . . destroy[]" their juvenile history data "when the child reaches age 28." The juvenile court is subject to a separate record-keeping statute, Minn. Stat. § 260B.171, subd. 1(a) (2024), which says that "the court shall keep and maintain records pertaining to delinquent adjudications until the person reaches the age of 28 years." Watkins turned 28 in April 2022.

It appears that Watkins is correct that the BCA did not timely destroy her juvenile records when she turned 28, as required by statute. Minn. Stat. § 299C.095, subd. 2(e). Had it done so, it is possible that DHS would never have learned about the disqualifying offense. That mistake, however, does not affect DHS's obligations under the Background Studies Act.

When conducting a background study, DHS is required to review information from the BCA. Minn. Stat. § 245C.08, subd. 1(a)(4). When DHS requested information about Watkins from the BCA, it was provided the not-yet-destroyed record of Watkins's juvenile adjudication. DHS also received records of the juvenile adjudication from the juvenile courts under section 245C.08, subdivision 1(a)(3). After receiving information from the BCA and juvenile court about Watkins's juvenile adjudication, and because section 245C.08, subdivision (4)(c), provides that Watkins's juvenile conviction "shall be considered a conviction in state district court" for purposes of disqualification under

6

section 245C.14, DHS was in "receipt of information showing . . . a conviction of . . . one or more crimes listed in section 245C.15." Minn. Stat. § 245C.14, subd. 1(a)(1). It follows that DHS was required to disqualify Watkins. *Id.*, subd. 1(a).

The statute also provides that such a disqualification is permanent with respect to Watkins's particular juvenile adjudication for aggravated robbery. Minn. Stat. §§ 245C.15, subd. 1(a), .24, subd. 2(a). So, even if the record was supposed to be destroyed, the statute is clear that the adjudication itself is what DHS is directed to consider. According to statute, DHS may only decline to consider records obtained from the BCA or a juvenile court demonstrating that someone should otherwise be permanently disqualified when DHS receives notice of a petition for expungement and the order for expungement "is directed specifically to" DHS[.]" Minn. Stat. § 245C.08, subd. 1(b)(1)-(2) (2024). DHS received no such notice or order here that would have prohibited it from considering the juvenile record. Ultimately, DHS adhered to its obligations under the statute. As such, the agency did not misapply the law. *See Jackson*, 933 N.W.2d at 413.

In reaching this decision, we are mindful that the BCA's failure to follow its statutory obligations to destroy the records appears to have had real consequences for Watkins, as DHS otherwise may not have learned of the adjudication. But consideration of the BCA's error is outside the scope of our certiorari review of DHS's determination. We also have no inherent authority in this context to issue an expungement order along the

lines of the order outlined in section 245C.08, subdivision 1(b)(1)-(2).[1] We take no position on whether that process is available to Watkins.

## II

We turn next to Watkins's argument that DHS erred in failing to set aside her disqualification because she does not pose a safety risk.

Watkins argued before DHS that it should have performed a risk-of-harm assessment before disqualifying her. On appeal, she maintains that she does not pose a safety risk, and in support of that argument, she refers to a "Parent PCA waiver," which, she explains, "permits parents with disqualifying histories to continue providing in-home care if they are already doing so."

As an initial point, we do not find support for Watkins's argument about the Parent PCA waiver in the materials she provided or in the statute. In her brief, she references a document from her addendum that includes excerpted language from what appears to be an announcement that DHS posted online that states that parents of a minor can be paid to provide PCA services. That excerpt does not support her position that a Parent PCA waiver allows DHS to set aside an otherwise disqualifying offense. To the contrary, the statute authorizing parents to provide care services for their minor children, to which Watkins's excerpt may be referring, provides that all support workers must meet all eligibility

---

[1] Only the Minnesota Supreme Court holds inherent authority "to enable it to administer justice whether any previous form of remedy has been granted or not." *See In re Greathouse*, 248 N.W. 735, 737 (Minn. 1933).

requirements. Minn. Stat. § 256B.85, subds. 7(8), 7b, 16(a)(1) (2024). We are not aware of authority providing an exception for parent support workers.

As for a risk-of-harm assessment, it is true that DHS may set aside some disqualifications if an individual does not pose a risk of harm. Minn. Stat. § 245C.22, subd. 4(a). But DHS "may not set aside the disqualification . . . if the individual was disqualified for a crime or conduct listed in section 245C.15, subdivision 1." Minn. Stat. § 245C.24, subd. 2(a). Because Watkins's crime of record is included in the list in section 245C.15, subdivision 1, the statute prohibited DHS from setting aside her disqualification. That means any risk-of-harm analysis would be futile because even if DHS concluded that Watkins does not pose a risk of harm, DHS still had no authority to set aside the disqualification. Because DHS acted consistent with the law, Watkins has not established a basis for relief.

### III

Watkins's final argument is that DHS unlawfully "skipp[ed] the fair hearing process under Minn. Stat. § 256.045, depriving [her] of due process."

The hearing provision Watkins cites is not applicable here. Minnesota Statutes section 256.045, subdivision 3(a)(9), provides that hearings are available to individuals disqualified because of a "preponderance of the evidence" that they "committed an act or acts that meet the definition of any of the crimes listed in section 245C.15, subdivisions 1 to 4[.]" Minn. Stat. § 256.045, subd. 3(a)(9). Watkins was not disqualified for that reason. Her disqualification arose because her juvenile adjudication was considered a conviction for a crime listed in section 245C.15, subdivision 1. *See* Minn. Stat. § 245C.14, subd.

1(a)(1). A disqualification under section 245C.14, subdivision 1(a)(1), does not trigger the right to a hearing under section 256.045, subdivision 3. *See* Minn. Stat. § 256.045, subd. 3. To the contrary, the statute provides that a person who is disqualified under section 245C.14, subdivision 1(a)(1), is not entitled to a hearing because the reconsideration decision is the final agency determination in that circumstance. Minn. Stat.§ 245C.27, subd. 1(c) (2024). Thus, Watkins was not entitled to a hearing, and DHS did not err in disqualifying Watkins without one.[2]

**Affirmed.**

---

[2] To the extent Watkins argues that her right to due process required a hearing, even if one is not required by statute, we have already held otherwise. In *Obara v. Minnesota Department of Health*, we concluded that the relator's criminal trial amounted to an evidentiary hearing that afforded him due process and "minimized the risk of an erroneous decision" with respect to disqualification based on his criminal convictions under Minnesota Statutes sections 245C.14-.15 (2006). 758 N.W.2d 873, 878 (Minn. App. 2008). We explained, "With this minimized risk and the burden of holding duplicative evidentiary hearings . . . procedural due process does not require that DHS provide relator an evidentiary hearing on his disqualification." *Id.* at 879.